CAROL MANAGEMENT CORPORATION *v.* BOARD OF TAX
REVIEW OF THE TOWN OF GREENWICH
(14726)

PETERS, C. J., CALLAHAN, BERDON, KATZ and PALMER, JS.

Argued September 30—decision released November 23, 1993

*Eugene F. McLaughlin, Jr.,* assistant town attorney, for the appellant (defendant).

*John Wayne Fox,* for the appellee (plaintiff).

KATZ, J. The principal issues in this tax appeal are: (1) whether the appeal by the plaintiff, Carol Manage-

ment Corporation, from the decision of the defendant, the Greenwich board of tax review, pursuant to General Statutes (Rev. to 1987) § 12-118[1] is collaterally estopped by an earlier action brought by the plaintiff pursuant to General Statutes § 12-119;[2] and (2) whether

[1] General Statutes (Rev. to 1987) § 12-118 provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated . . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . . If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

Section 12-118 now provides for appeals to the Superior Court from decisions of the Connecticut appeals board for property valuation. The provisions of § 12-118 allowing appeals from decisions of local boards of tax review have been moved to General Statutes § 12-117a.

[2] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation . . . . In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

the trial court incorrectly determined, contrary to the decision of the defendant, that the plaintiff's property had been overvalued by the tax assessor of the town of Greenwich. We answer both of these questions in the negative and affirm the judgment of the trial court.

The following facts are undisputed. The plaintiff's property, located at 25 West Elm Street in Greenwich, is a six-story brick apartment building containing fifty-three units of living space and garage space for thirteen vehicles. On October 1, 1979, in connection with a decennial revaluation mandated by General Statutes (Rev. to 1979) § 12-62,[3] the Greenwich tax assessor determined that the fair market value of the property was $3,296,300. This translated into an assessed value of $2,307,410 ($742,000 for the land and $1,565,410 for the building).[4]

In 1983, the plaintiff[5] filed a two count complaint in the Superior Court challenging the assessment. In the first count, the plaintiff sought relief under § 12-118 from its 1979, 1980 and 1981 tax assessments. In the second count, the plaintiff claimed, pursuant to

[3] General Statutes (Rev. to 1979) § 12-62 provides in relevant part: "Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years thereafter, view all of the real estate of their respective municipalities, and shall revalue the same for assessment . . . ."

[4] General Statutes § 12-62a provides in relevant part: "(b) Each . . . municipality shall, no later than the close of its next revaluation required under the provisions of section 12-62, assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value, as determined under section 12-63."

[5] Prior to June, 1983, the property belonged to the estate of Alfred L. Kaskel, which was the named plaintiff in the 1983 action. The defendant claims, and the plaintiff does not dispute, that the plaintiff, Carol Management Corporation, was also a party to the 1983 action, and that the estate and the plaintiff corporation were one and the same entity. This claim is supported by the record in this case. The estate deeded the property to the plaintiff in June, 1983.

§ 12-119, that the assessments were "manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . ." The trial court, *Hon. Raymond J. Devlin,* state trial referee, rendered judgment for the defendant on both counts. As to the first count, the court found that the plaintiff had not challenged the assessment before the defendant pursuant to General Statutes § 12-111.[6] Because a party may only appeal under § 12-118 from the action of a board of tax review, and the plaintiff's claim had never come before the defendant, the court rendered judgment for the defendant. With regard to the second count, the court found that the plaintiff had not met its burden of proof under § 12-119 and rendered judgment for the defendant on the merits.[7]

In 1985, the plaintiff appealed the 1984 assessment of its property to the defendant pursuant to § 12-111. The defendant refused to grant relief. The plaintiff then filed a complaint in the Superior Court pursuant to § 12-118 challenging the defendant's denial of relief. In 1986, the plaintiff amended its complaint to include a challenge to the 1985 and 1986 assessments of its property, and to add a second count directly challenging the assessments of its property pursuant to § 12-119.[8] The defendant answered the complaint and raised the special defense of res judicata.

In an October 12, 1988 motion for summary judgment, the defendant claimed that the 1984 decision by Judge Devlin on the § 12-119 claim precluded the plaintiff's § 12-118 appeal under principles of collateral

---

[6] General Statutes § 12-111 provides in relevant part: "[A]ny person . . . claiming to be aggrieved by the doings of the assessors of [a] town may appeal therefrom to [the] board of tax review . . . ."

[7] That case, *Estate of Alfred Kaskel* v. *Greenwich,* Superior Court, judicial district of Stamford-Norwalk, Docket No. 760016502 (March 7, 1984), was never appealed.

[8] The plaintiff subsequently revised its complaint to include the 1987, 1988, 1989, 1990 and 1991 tax years.

estoppel. On January 6, 1989, the court, *Ryan, J.*, rejected the defendant's collateral estoppel argument because of the "distinction in the standard of review between § 12-118 and § 12-119." The court therefore denied the defendant's motion for summary judgment as to the first count of the plaintiff's complaint.[9] The defendant subsequently amended its answer to assert collateral estoppel as a special defense to the plaintiff's § 12-118 appeal.

After trial, the court, *Lewis, J.*, rendered judgment for the plaintiff on its § 12-118 appeal. In its November 13, 1992 memorandum of decision, the trial court also rejected the defendant's collateral estoppel defense because of "the vast difference between § [12-118] appeals and § [12-119] law suits."[10] In addressing the merits of the plaintiff's claim, the court found that there was no reasonable probability that the plaintiff's building would be converted to condominium use, and concluded, therefore, contrary to the claim of the defendant's appraiser, that the highest and best use of the plaintiff's property was its actual use as rental apartments. The court also found that the comparable sales method, the preferred method for valuing rental property under General Statutes § 12-63b,[11] was the

---

[9] In its motion for summary judgment, the defendant also claimed that Judge Devlin's 1984 decision on the General Statutes § 12-119 claim precluded the § 12-119 claim in the second count of the plaintiff's complaint under principles of res judicata. The court, *Ryan, J.*, agreed and granted summary judgment as to the second count of the plaintiff's complaint. That decision is not involved in this appeal.

[10] The court relied on *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339–40, 597 A.2d 326 (1991).

[11] General Statutes § 12-63b provides in relevant part: "(a) The assessor or board of assessors in any town, when determining the present true and actual value of real property as provided in section 12-63, which property is used primarily for the purpose of producing rental income, exclusive of such property used solely for residential purposes, containing not more than six dwelling units and in which the owner resides, and with respect to which property there is insufficient data in such town based on current bona fide

proper method of appraisal. The court accepted the opinion of the plaintiff's appraiser that the fair market value[12] of the property was $2,400,000, rather than $3,296,300. The plaintiff's appraiser arrived at this figure by comparing the plaintiff's property with three similar apartment houses that were sold in 1981.[13] The court rejected the claim of the defendant's appraiser that the capitalization of income approach was the most appropriate method of valuation. The court held that the plaintiff was entitled to a refund or credit for any excess payments made to the town of Greenwich for the 1984 and subsequent tax years.

The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The defendant claims that: (1) the plaintiff's § 12-118 appeal should have been barred because Judge Devlin's 1984 decision

sales of comparable property which may be considered in determining such value, shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property."

[12] General Statutes § 12-63 provides in relevant part: "The present true and actual value of . . . property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale."

[13] The appraiser analyzed three comparable apartment buildings in Greenwich—Virginia Court, Fairfield House, and Harborview—that were sold between February and May, 1981, about one and one-half years after the October, 1979 revaluation date. The sale price per room at these buildings was $11,307, $14,312 and $17,614, respectively. After adjusting these figures to reflect date of sale and other differences between the three buildings, the appraiser arrived at an adjusted price per room of $8904, $13,382, and $13,205, respectively. The appraiser decided to use $13,000 as the estimated value per room of the plaintiff's building. When this figure was multiplied by 187, which is the total number of rooms in the building, the overall value of the property rounded out to $2,400,000.

pursuant to § 12-119 "collaterally encompassed the criteria for determining fair market value under § 12-118"; (2) the trial court improperly rejected the cost of replacement approach used by the Greenwich tax assessor to value the plaintiff's property; (3) the trial court incorrectly determined that conversion to condominiums was not the highest and best use of the plaintiff's property; and (4) the trial court's reliance on the report and testimony of the plaintiff's appraiser was clearly erroneous because that evidence conflicted with testimony given by the same appraiser in an earlier case. We reject all of these claims.

I

Because the defendant's collateral estoppel claim, if valid, would dispose of this appeal, we consider it first. The defendant claims that the trial court incorrectly determined that the plaintiff's appeal under § 12-118 was not collaterally estopped by Judge Devlin's earlier judgment under § 12-119. We disagree.

In *Second Stone Ridge Cooperative Corp.* v. *Bridgeport,* 220 Conn. 335, 339–40, 597 A.2d 326 (1991), we distinguished appeals brought pursuant to §§ 12-111 and 12-118 from direct actions brought pursuant to § 12-119. Sections 12-111 and 12-118 " 'provide a method by which an owner of property may directly call in question the valuation placed by assessors upon his property by an appeal to the board of [tax review for] relief, and from it to the courts. . . . These statutes limit to a short period the time within which the property owner can seek relief under them, and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes.' *Cohn* v. *Hartford,* 130 Conn. 699, 702, 37 A.2d 237 (1944).

"On the other hand, § 12-119 allows a taxpayer one year to bring a claim that the tax was imposed by a

town that had no authority to tax the subject property, or that the assessment was 'manifestly excessive *and* could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . .' (Emphasis added.) Our case law makes clear that a claim that an assessment is 'excessive' is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue. It is this element that distinguishes § 12-119 from its more frequently invoked companion, § 12-118." *Second Stone Ridge Cooperative Corp.* v. *Bridgeport,* supra; see also *Wilson* v. *Kelley,* 224 Conn. 110, 118, 617 A.2d 433 (1992).

The defendant acknowledges the distinctions between the two statutes and concedes that Judge Devlin in the 1984 case dismissed the plaintiff's § 12-118 appeal without reaching its merits. The defendant nevertheless argues that in deciding the merits of the plaintiff's § 12-119 claim, Judge Devlin did not limit his consideration to whether the assessment was manifestly excessive or arrived at in disregard of the statutory provisions governing property valuation; rather, he employed the standard of review applicable to § 12-118 appeals and considered whether the plaintiff's property had been substantially overvalued. Specifically, the defendant asserts that Judge Devlin's comments on the "wide variance in the appraisal figure[s] submitted," and on his power to accept so much of the testimony of the appraisal experts as he found reasonable, indicate that he was considering issues beyond what is required for a § 12-119 claim. According to the defendant, these comments, coupled with citations to cases decided under § 12-118, demonstrate that Judge Devlin did not narrowly confine his consideration to whether there was misfeasance or nonfeasance by the taxing authority, or whether the assessment was arbitrary or so

excessive or discriminatory as to demonstrate a disregard of duty by the assessors. The defendant claims that in deciding whether the assessment was manifestly excessive, Judge Devlin applied the rule of valuation from § 12-63, which applies to § 12-118 appeals as well as § 12-119 actions, and determined whether the assessment reflected the fair market value of the property. The defendant accordingly asserts that because Judge Devlin, in resolving the § 12-119 claim, incidentally decided valuation issues pertinent to a § 12-118 claim in favor of the defendant, the plaintiff should have been barred from relitigating these issues. We disagree.

Res judicata and collateral estoppel "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *State* v. *Ellis,* 197 Conn. 436, 464–65, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise,* 213 Conn. 388, 567 A.2d 1221 (1990). "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim." (Emphasis added.) *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 316, 460 A.2d 1277 (1983). " 'For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been *actually decided* and the decision must have been *necessary* to the judgment.' " (Emphasis added.) *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988); see also *Ashe* v. *Swenson,* 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Hope,* 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991). "An issue is '*actually litigated*' if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. (Emphasis added.) 1 Restatement (Sec-

ond), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, 'in the absence of a determination of the issue, the judgment could not have been validly rendered.' F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), Judgments § 27, comment (h) (1982)." (Emphasis in original.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374 (1993).

The defendant argues that because Judge Devlin used the criteria for determining the reasonableness of valuation under § 12-118 in his consideration of the plaintiff's direct action under § 12-119, those findings should have precluded the plaintiff from relitigating the claim. Both Judge Ryan, in ruling on the motion for summary judgment, and Judge Lewis, in trying the first count, rejected the defendant's contention that Judge Devlin's decision had collateral estoppel effect on this action, in light of the well recognized distinctions between the two statutes.

There is another and more compelling reason why the defendant's argument must fail. Although it was essential to the decision of a § 12-119 claim for Judge Devlin to examine whether § 12-63 had been followed, he did not determine as part of his disposition of the § 12-119 claim what constituted the highest and best use of the property in 1979, a decision Judge Lewis was later called upon to make in connection with the § 12-118 appeal. In response to a motion to clarify his March 7, 1984 decision, Judge Devlin stated that he had not specifically determined the highest and best use of the plaintiff's property, although it "was an element an appraiser was entitled to take into consideration in his determination of the fair market value."

Consideration of the highest and best use has been recognized by this court as a valid part of any fair market value determination. Section 12-63[14] indicates that the standard for valuation is the property's "present true and actual value," which is synonymous with "market value, actual value, fair market value, market price and fair value . . . ." *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 623 n.3, 438 A.2d 782 (1981). "Fair market value" is defined as "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal . . . ." (Internal quotation marks omitted.) *Uniroyal, Inc.* v. *Board of Tax Review,* 174 Conn. 380, 390, 389 A.2d 734 (1978). A further definition is found in *Mazzola* v. *Commissioner of Transportation,* 175 Conn. 576, 581–82, 402 A.2d 786 (1978), to the effect that fair market value "is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use." See also *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 428, 494 A.2d 624 (1985) ("[a]n assessment of land at its fair value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land"). As we said in *State National Bank* v. *Planning & Zoning Commission,* 156 Conn. 99, 101, 239 A.2d 528 (1968), "[t]he 'highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate."

We read Judge Devlin's decision to reflect approval of the assessor's use of § 12-63 as a means of assessment, and to hold merely that such consideration by

---

[14] See footnote 12.

the assessor had not been inappropriate and did not result in a manifestly illegal appraisal. Therefore, although consideration of the assessor's reliance on § 12-63 had indeed been part of the court's decision as to whether the assessment was manifestly excessive or whether it had been arrived at in disregard of the statutes governing property valuation, Judge Devlin specifically refused to make auxiliary findings as to what actually constituted the highest and best use of the property in 1979.

Regardless of whether Judge Devlin journeyed beyond what was essential for a determination of the § 12-119 claim, he did not make factual findings that would collaterally estop a later court from deciding the value of the property. The issue raised by the § 12-119 appeal was whether the relevant statutes had been properly applied by the assessor. On the other hand, the issue raised by the § 12-118 appeal concerned what actually constituted the fair market value of the property as ascertained by a decision about its highest and best use. The earlier decision, therefore, did not have any preclusive effect upon the later court's ability to decide the case before it.

## II

The defendant next claims that the trial court incorrectly determined, contrary to the decision of the defendant, that the plaintiff's property had been overvalued by the Greenwich tax assessor. More specifically, the defendant claims that the trial court: (1) improperly rejected the cost of replacement approach used by the Greenwich tax assessor to value the plaintiff's property; (2) incorrectly determined that conversion to condominiums was not the highest and best use of the plaintiff's property; and (3) improperly relied on the report and testimony of the plaintiff's appraiser

because that evidence conflicted with testimony given by the same appraiser in an earlier case. We reject each of these claims.

### A

First, the defendant claims that the trial court improperly rejected the cost of replacement approach used by the Greenwich tax assessor to value the plaintiff's property. The defendant argues that because the plaintiff did not offer any direct evidence that the assessor's analysis was erroneous, the trial court should have given deference to the assessor's judgment and upheld the initial assessment. We disagree.

The trial court in a § 12-118 appeal hears the case de novo; *Stamford Apartments Co.* v. *Stamford,* 203 Conn. 586, 588, 525 A.2d 1327 (1987); and has " ' "the right to accept so much of the testimony of the experts *and the recognized appraisal methods which they employed* as [it] finds applicable . . . ." ' (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [181 Conn. 217, 221, 435 A.2d 24 (1980)], quoting *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977)." *Stamford Apartments Co.* v. *Stamford,* supra, 594.[15] "While we have recognized that proper deference should be accorded to the assessor's valuation . . . no deference to the assessor's valuation [is] warranted" when neither the assessor nor the appraiser who valued the property during the revaluation testifies at trial. Id., 589.

---

[15] In *Second Stone Ridge Cooperative Corp.* v. *Bridgeport,* 220 Conn. 335, 342, 597 A.2d 326 (1991), we noted that "[a]t least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence. *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 230, 188 A. 433 (1936); see also General Statutes § 12-63b. Each of these is an approved method of ascertaining the actual value of real estate for purposes of taxation." (Internal quotation marks omitted.)

It appears from the record that neither the assessor nor the person who appraised the plaintiff's property in 1979 testified before the trial court. The only evidence pointed to by the defendant concerning the methodology employed in the assessment is the assessor's card and the previously recorded testimony of Albert G. Kirk, who became the Greenwich assessor in December, 1979. Kirk testified that it appeared from the assessor's card that a cost of replacement approach had been used to value the plaintiff's property. He stated that he had no way of knowing, however, whether other approaches had even been considered.

In the absence of any evidence on why the assessor used the cost of replacement approach to value the plaintiff's property and how the values in the assessment were calculated, deference to the assessor's valuation was not required. Further, both Robert L. Levy, the plaintiff's appraiser, and Michael Gold, the defendant's appraiser, testified that the cost of replacement approach was the least valuable method of valuing the plaintiff's property. The Greenwich assessor at the time of trial, John P. Grecco, Jr., also testified that the cost of replacement approach was the worst method and the comparable sales approach was the best method of valuing an apartment building. It therefore was not improper for the trial court to reject the cost of replacement approach and the assessor's valuation.[16]

---

[16] The defendant also argues that the trial court's conclusion that the assessment "substantially overvalued" the plaintiff's property "because it was based on an erroneous assumption that it was reasonably probable on October 1, 1979, that the property would be converted to condominium units" was clearly erroneous, because the replacement cost approach "is not concerned with the form of ownership of the property." As discussed above, neither the assessor nor the appraiser who valued the property in 1979 testified at the trial. The defendant's appraiser at trial, Michael Gold, testified that he performed a cost of replacement analysis "reflecting the highest and best use for condominium conversion." The trial court could reasonably have concluded that the Greenwich assessor, like Gold, had assumed condominium conversion in performing the cost of replacement analysis.

## B

The defendant next claims that the trial court incorrectly determined that conversion to condominiums was not the highest and best use of the plaintiff's property. The defendant argues that this determination was incorrect because: (1) the trial court relied on testimony offered by the plaintiff that, at the time of the revaluation in October, 1979, it had no intention of converting its apartment building into condominiums; and (2) the trial court's acceptance of Levy's comparable sales analysis, which was based on the assumption that the building would be converted to condominiums, is inconsistent with its determination. We reject these arguments.

The parties agree that, while property should be valued according to its highest and best use, the valuation of an apartment building may be based on its potential conversion to condominiums only if conversion is reasonably probable in the near future. See *Stamford Apartments Co.* v. *Stamford,* supra, 592. The highest and best use of a property and the reasonable probability of conversion are questions of fact for the trier of fact. Id., 592–93; see *Greene* v. *Burns,* 221 Conn. 736, 748, 607 A.2d 402 (1992). We will not "substitute our evaluation of the evidence for that of the trial court . . . ." *Stamford Apartments Co.* v. *Stamford,* supra, 593.

The defendant argues that the trial court relied on the plaintiff's subjective intent in determining whether conversion was reasonably probable.[17] We disagree.

[17] The defendant does not argue that the owner's intent is irrelevant to the issue of reasonable probability of conversion, only that the court may not rely on it. Our decision in *Stamford Apartments Co.* v. *Stamford,* 203 Conn. 586, 525 A.2d 1327 (1987), affirmed a finding of no probability of conversion that was based, at least in part, on the owner's intent not to

The court cited a number of factors, in addition to the plaintiff's intent, that contributed to its determination, including high conversion costs,[18] weak demand for converted condominiums,[19] a shortage of rental apartments,[20] and changes in legislative policy providing enhanced protection against eviction for the elderly.[21] These findings are adequately supported by the record and therefore will not be disturbed.

The defendant also argues that the trial court's finding that conversion was not reasonably probable is inconsistent with its acceptance of Levy's comparable sales analysis, because the analysis assumed conversion to condominiums. This argument is based on the fact that the three apartment buildings that Levy used in the analysis were all converted into condominiums. The trial court was aware of this implied inconsistency, and specifically noted that Levy's analysis favored the defendant to the extent that the comparable buildings had been converted, even though conversion was not probable at the plaintiff's building.

We have said that the " 'process of estimating the value of property for taxation is, at best, one of approx-

convert. Id., 593 n.4; see also *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 44, 428 A.2d 789 (1980). Such consideration continues to remain relevant.

[18] The report submitted by the defendant's appraiser, Michael Gold, estimated that the conversion costs would be $26 per square foot, for a total of more than $1.5 million.

[19] The plaintiff's appraiser, Robert L. Levy, testified that by October, 1979, only one apartment building in central Greenwich had been converted to condominiums. He stated: "I don't think one building necessarily makes it a market. Don't forget, there is a difference between conversion and new construction. I differentiate the two. There was a market for new construction of condominiums. There appears to be a much more limited market for conversion of older buildings based upon the fact that only one had taken place."

[20] The defendant's appraiser, Michael Gold, testified that there was a shortage of rental apartments in the area in October, 1979.

[21] A witness for the plaintiff testified that in October, 1979, the plaintiff's apartment building had a large population of senior citizens.

imation and judgment, and there is a margin for a difference of opinion.' *Burritt Mutual Savings Bank v. New Britain,* 146 Conn. 669, 675, 154 A.2d 608 (1959). 'There may be more ways than one of estimating the value of such . . . [property] for taxation.' *Bridgeport Brass Co. v. Drew,* 102 Conn. 206, 212, 128 A.2d 413 (1925)." *Second Stone Ridge Cooperative Corp. v. Bridgeport,* supra, 342. In accepting Levy's analysis, the court relied in part upon General Statutes § 12-63b,[22] which indicates that the comparable sales approach is the preferred method of valuing rental property. The court rejected the recommendation of Gold, the defendant's appraiser, whose capitalization of income analysis relied much more heavily on conversion to condominiums.[23] In light of § 12-63b and the evidence in the record, we conclude that the determination by the trial court that there was no reasonable probability of conversion to condominiums and the decision to accept the market value in accordance with Levy's analysis were not clearly erroneous.

## C

Finally, the defendant claims that the trial court's reliance on the report and testimony of Levy, the plaintiff's appraiser, was clearly erroneous because that evidence conflicted with testimony given by Levy in an earlier case. We disagree.

Levy was the appraiser for the taxpayer in an earlier case, *Stamford Apartments Co. v. Stamford,* supra. In that case, Levy adjusted the results of his comparable sales analysis to reflect differences in interest rates on the revaluation date and on the sale dates of the com-

---

[22] See footnote 11.

[23] Had the court chosen to adopt a capitalization of income analysis (which is not the preferred method under General Statutes § 12-63b), it could have relied on the alternative analysis of the plaintiff's appraiser, Levy. Levy's capitalization of income analysis yielded a fair market value of $1,500,000, which is $900,000 less than the value the court ultimately found.

parable properties. The defendant claims that a similar adjustment in this case would increase Levy's appraisal of the plaintiff's property using the comparable sales method to more than $4,000,000. During cross-examination, Levy conceded that the adjustment would have this effect. He testified that he did not believe that an adjustment was warranted in this case, however, because the Greenwich market differed from the Stamford market.

We have long held that "[t]he question of evaluating the credibility of the appraisers is for the trial court, not this court. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [supra, 220–21]; see also *Uniroyal, Inc.* v. *Board of Tax Review,* [supra, 174 Conn. 387]." *Stamford Apartments Co.* v. *Stamford,* supra, 592. This court "cannot retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 220. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." Id., 221–22.

The trial court gave the defendant ample opportunity to challenge Levy's credibility. The defendant was permitted to cross-examine Levy extensively about the evidence he had given in the earlier case, and to introduce portions of that evidence as exhibits. In his November 13, 1992 memorandum of decision, Judge Lewis specifically stated, "I find the testimony of the plaintiff's appraiser to be credible." After reviewing the evidence in the record, we cannot say that that finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other justices concurred.