# JUPITER REALTY COMPANY *v.* BOARD OF TAX REVIEW OF THE TOWN OF VERNON
## (SC 15580)

Callahan, C. J., and Borden, Berdon, Katz, Palmer, McDonald and Peters, Js.

Argued June 5—officially released August 12, 1997

*Stanley Falkenstein*, with whom was *Julia M. Paul*, for the appellant (plaintiff).

*Martin B. Burke*, with whom, on the brief, was *Dennis M. McManus*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The dispositive issue in this appeal is whether, pursuant to General Statutes (Rev. to 1993) §§ 12-111 and 12-117a,[1] a taxpayer can challenge an assessor's decennial revaluation, conducted pursuant to General Statutes (Rev. to 1991) § 12-62,[2] in an interim

---

[1] General Statutes (Rev. to 1993) § 12-111 provides in relevant part: "[A]ny person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes and any person to whom title to such property has been transferred since the assessment date, claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to such board of tax review . . . ."

General Statutes (Rev. to 1993) § 12-117a provides in relevant part: "[A]ny person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, or October 1, 1992, may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . ."

[2] General Statutes (Rev. to 1991) § 12-62 provides in relevant part: "(a) Commencing October 1, 1991, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the effective date of the last preceding revaluation of all

year between decennial revaluations. The plaintiff, Jupiter Realty Company, appealed to the Superior Court pursuant to § 12-117a from the refusal of the defendant, the board of tax review of the town of Vernon (board), to reduce the plaintiff's tax assessment on the list of October 1, 1992, on real estate located in Vernon. In its challenge to the board's refusal to lower the 1992 assessment, the plaintiff claimed that the 1991 revaluation, upon which the 1992 assessment was based, was excessive. During the pendency of the appeal to the Superior Court, the plaintiff amended its appeal, pursuant to § 12-117a, to include the assessments for the years 1993, 1994 and 1995.[3] After a trial, the court affirmed the board's refusal to reduce the assessments for the tax years in question, basing its decision solely on the fact that the plaintiff had not appealed the assessment for the year in which the decennial revaluation had been conducted. The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We conclude that the trial court improperly determined that in the years intervening between decennial valuations, a taxpayer may not challenge an assessment on the ground that the decennial revaluation overvalued the taxpayer's property.

---

real property and every ten years thereafter, revalue all of the real estate in their respective municipalities for assessment purposes, in accordance with the provisions of subsection (b) of this section. The assessments derived from each such revaluation shall be used for the purpose of levying property taxes in such municipality in the assessment year in which such revaluation becomes effective and in each assessment year thereafter until the next succeeding revaluation in accordance with this section becomes effective. . . ."

[3] General Statutes (Rev. to 1993) § 12-117a provides in relevant part: "If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review, as the case may be, to make such amendment effective. . . ."

The record reveals the following facts. On October 1, 1991, the plaintiff owned a one-story, multitenant, industrial building of approximately 39,316 square feet that was located on a four acre parcel of land in Vernon. On October 1, 1991, as part of a decennial revaluation, the assessor of the town of Vernon valued the plaintiff's property at $1,708,000. Accordingly, the assessed value of the plaintiff's property on the list of October 1, 1991, was determined to be $1,195,600.[4] The plaintiff did not appeal this assessment. In 1992, on the basis of the 1991 decennial revaluation, the assessor again determined the assessed value of the plaintiff's property to be $1,195,600. The plaintiff appealed the 1992 assessment to the board, which refused to reduce the assessment. The trial court affirmed the board's decision.

In its memorandum of decision, the trial court presented three reasons for its conclusion that during the intervening years between decennial revaluations, a property owner may not appeal the refusal of a board of tax review to reduce the assessment on the owner's property on the ground that the decennial revaluation was excessive. First, the trial court determined that mandatory language in § 12-62 insulates assessors from claims for reduced assessments during the years between decennial revaluations. Second, the trial court concluded that the plaintiff's claim was barred by our precedent interpreting the parameters of mandatory and permissive interim revaluations. Third, the trial court reasoned that the plaintiff had not exercised its statutory right to appeal in a timely fashion. Thus, the trial court did not reach the merits of the plaintiff's claim that the assessments at issue in this case, which

[4] General Statutes (Rev. to 1991) § 12-62a (b) provides: "Each such municipality shall, no later than the close of its next revaluation required under the provisions of section 12-62, assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value, as determined under section 12-63."

were based upon the 1991 decennial revaluation, were excessive. See *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 525 A.2d 91 (1987).

On appeal, the plaintiff contends that neither § 12-62 nor any other statutes bearing on tax appeals preclude a property owner from bringing an appeal that challenges the decennial revaluation in a year subsequent to the revaluation year. In addition, the plaintiff argues that the cases relied upon by the trial court for the proposition that appeals cannot be taken to reduce assessments in the intervening years between decennial revaluations are not applicable to this case.[5] We agree.

The board offers the same arguments relied on by the trial court in its memorandum of decision dismissing the plaintiff's appeal, namely: (1) that the mandatory language in § 12-62 insulates assessors from claims for reduced assessments during the years between decennial revaluations; (2) that the plaintiff's appeal is barred by several of our previous cases interpreting the parameters of mandatory and permissive interim revaluations; and (3) that the plaintiff's appeal was not timely. We are not persuaded.

I

We first address the board's contention that certain mandatory language in § 12-62 bars the plaintiff from challenging the 1991 revaluation in any year other than the year of revaluation. Our analysis of whether § 12-62 insulates boards of tax review from appeals for overvaluations during the years between decennial revaluations is guided by well established principles of statutory construction. "Statutory construction is a question of law and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1211

---

[5] The plaintiff does not claim that any possible reduction in the decennial revaluation resulting from this appeal should be applied to reduce any assessment from which it did not appeal, i.e., the 1991 assessment.

(1995). "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996); see also *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80 (1995).

The first sentence of § 12-62 (a) requires assessors to revalue property every ten years. See footnote 2 of this opinion. The second sentence of § 12-62 (a) provides: *"The assessments derived from each such revaluation shall be used* for the purpose of levying property taxes in such municipality in the assessment year in which such revaluation becomes effective and in each assessment year thereafter until the next succeeding revaluation in accordance with this section becomes effective." (Emphasis added.) The board contends that the mandatory language "shall be used" nullifies a taxpayer's ability to challenge the assessor's decennial revaluation in years between decennial revaluations. The board concedes, however, that an appeal in the year of the decennial revaluation is permissible. The board's interpretation of § 12-62, therefore, would have its mandatory language bar only those appeals that challenge revaluations subsequent to the year of the decennial revaluation. If we are to interpret the effect of the mandatory language in § 12-62 consistently, however, we must either bar all appeals that challenge decennial revaluations, or we must allow a taxpayer to challenge a decennial revaluation whenever it is used as the basis for a yearly assessment. We conclude that the latter interpretation is the more logical in view of: (1) the history of § 12-62, its chronological relationship to the

tax appeal statutes, and the public policy behind tax appeals; (2) the uniform understanding of the tax appeals statutes as held by those charged with carrying out the statutes' mandates and by those who litigate and adjudicate tax appeals; (3) the bizarre and unacceptable results that would ensue if we were to adopt the board's position; and (4) our decision in *Carol Management Corp.* v. *Board of Tax Review,* 228 Conn. 23, 633 A.2d 1368 (1993), in which we considered and upheld a subsequent challenge to a decennial revaluation.

The decennial revaluation statute originally was enacted as Public Acts 1917, c. 214, in substantially the same form as it exists today in § 12-62.[6] Because of the year of its enactment, we have no legislative history for Public Acts 1917, c. 214. We are aware, however, that when it was enacted, the statutes permitting the appeal of local tax assessments were already in place. "It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole." *State* v. *Breton,* 235 Conn. 206, 226, 663 A.2d 1026 (1995).

The first statutory right of a taxpayer to appeal from an assessor's doings was enacted in October, 1737.[7]

---

[6] Public Acts 1917, c. 214, provides in relevant part: "The assessors of all towns, consolidated towns and cities, and consolidated towns and boroughs, unless otherwise provided, shall, on or before February 1, 1920, and during each period of ten years thereafter, view all of the real estate of their respective municipalities, and shall revalue the same for assessment, and in the performance of these duties at least two of the assessors shall act together and all valuations shall be separately approved by a majority of the assessors." We note that the mandatory language relied on by the board was not a part of the original enactment of the statute.

[7] General Statutes (1808 Rev.) tit. CII, c. 1, § 4, provides in relevant part: "But if such listers will not give just relief, then upon application made by the aggrieved party to two or more justices of the peace and three selectmen of the town, or to a majority of the civil authority and selectmen of such town qualified by law to judge in such case, notifying two or more of the listers to shew reasons if any they have, why relief should not be granted

We know, therefore, that for 190 years prior to the legislature's requiring decennial revaluations, a statutory right existed for taxpayers to appeal annual assessments. This long-standing history of the right to appeal annual assessments evidences a public policy in favor of allowing taxpayers to question those charged with assessing property for taxation purposes. "A statute should be interpreted according to the policy which the legislation seeks to serve." *Aaron* v. *Conservation Commission*, 183 Conn. 532, 538, 441 A.2d 30 (1981). The board's interpretation of § 12-62, however, would have that statute substantially limit this right by excluding for appeal purposes any challenge to a decennial revaluation not brought the first year the revaluation was used for assessment purposes. We decline to read into § 12-62 such a circumscription of the well established statutory right to appeal property tax assessments without any legislative indication that such a significant result was intended. *State* v. *Cobb*, 234 Conn. 735, 750, 663 A.2d 948 (1995) ("[w]e will not infer that the legislature intended to enact a significant change in existing law without an unequivocally expressed manifestation of legislative intent" [internal quotation marks omitted]).

The uniform understanding among assessors, town counsel, boards of tax review and real estate tax attorneys also supports our reading of § 12-62. We have recognized that an established practice, particularly that of public officers charged with carrying out the provisions of a statute, may be cogent evidence of the intent manifested in that statute. See *Institute of Living* v. *Hartford*, 133 Conn. 258, 267, 50 A.2d 822 (1946); *Sav-*

to such aggrieved person, they shall consider the case and give such relief as they shall judge just and reasonable; and also in all cases where any person may be wrongly charged, or over charged, either by way of assessment or otherwise, by the listers, in their list as aforesaid . . . ." A footnote to this section indicates that it was first passed in October, 1737.

*ings Bank of Rockville* v. *Wilcox*, 117 Conn. 188, 194, 167 A. 709 (1933). It was conceded by the board at oral argument that before the trial court's decision in this case, the statute's "audience"—assessors, town counsel, boards of tax review and real estate tax attorneys—believed that a challenge to a decennial revaluation in a subsequent year was permissible. This common understanding among those who are guided by the tax appeal statutes buttresses our conclusion that § 12-62 does not bar the plaintiff's appeal. See *State* v. *Piorkowski*, 236 Conn. 388, 408, 672 A.2d 921 (1996) (understanding by likely intended audience of statute is guide to statutory meaning).

Additionally, we decline to read our statutes so as to limit appeals of allegedly inaccurate valuations to the year of the revaluation because such a rule would generate severe inequities. *King* v. *Board of Education*, 203 Conn. 324, 332–33, 524 A.2d 1131 (1987) ("courts will assume that the legislature intended to accomplish a reasonable and rational result" [internal quotation marks omitted]). For example, assume that an assessor, as part of a decennial revaluation, values certain real estate excessively. The owner, for reasons of his or her own, chooses not to challenge the assessment. Three years later, the owner conveys the real estate. Under the trial court's interpretation of § 12-62, the transferee would be unable to challenge the decennial revaluation and would have to pay taxes based on excessive assessments for seven more years with no avenue of relief. Such a result would be unacceptable.

Moreover, we have affirmed a decision of the trial court that allowed a taxpayer to challenge a decennial revaluation in a subsequent year. In *Carol Management Corp.* v. *Board of Tax Review*, supra, 228 Conn. 23, the taxpayer had appealed the 1984 assessment of its property, a six story brick apartment building located in Greenwich. The decennial revaluation that served as

the basis for this assessment was performed in 1979 and resulted in a fair market value determination of $3,296,300 and an assessed value of $2,307,410. "In addressing the merits of the plaintiff's claim, the court found that there was no reasonable probability that the plaintiff's building would be converted to condominium use, and concluded, therefore, contrary to the claim of the defendant's appraiser, that the highest and best use of the plaintiff's property was its actual use as rental apartments. The court also found that the comparable sales method, the preferred method for valuing rental property under General Statutes § 12-63b, was the proper method of appraisal. The court accepted the opinion of the plaintiff's appraiser that the fair market value of the property was $2,400,000, rather than $3,296,300." Id., 28–29. In that case, the trial court found, in ruling on the 1985 appeal, that the 1979 decennial revaluation was excessive. We affirmed the judgment of the trial court, implicitly acknowledging that such a challenge was permissible.

On the basis of the foregoing considerations, we conclude as a matter of statutory construction that § 12-62 does not insulate boards of tax review from appeals from overvaluation during the years between decennial revaluations.

II

We next turn to the board's claim that our previous case law precludes the plaintiff's appeal. The board cites *Ralston Purina Co.* v. *Board of Tax Review*, supra, 203 Conn. 435–39, for the proposition that "assessors are not required to make interim revaluations based on market fluctuations in the absence of particular circumstances."[8] The board then contends: "the plaintiff is

[8] The board also cites *Pauker* v. *Roig*, 232 Conn. 335, 654 A.2d 1233 (1995), *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 541 A.2d 478 (1988), and *Uniroyal, Inc.* v. *Board of Tax Review*, 182 Conn. 619,

attempting to challenge the 1991 revaluation by challenging the assessments on Grand Lists (which are based on the 1991 revaluation) in successive years. In effect, the plaintiff is asking for an interim revaluation because it is asking for the valuation to be adjusted in a tax year following the revaluation. The relief the plaintiff is seeking is tantamount to a request for an interim revaluation . . . ." The question, then, is whether the plaintiff's challenge to the 1991 decennial revaluation brought in response to the 1992 assessment, which was based on the 1991 revaluation, is, for the purposes of the precedent in *Ralston Purina Co.*, an interim revaluation. We conclude that it is not.

The distinction between requesting a revaluation because the original revaluation was in error and requesting a revaluation because circumstances subsequent to the initial revaluation have effected a change in the present true and actual value of the property is identifiable and justifiable. Simply, a request for an interim revaluation seeks a new revaluation as of the present date because of altered conditions since the latest revaluation. In *Uniroyal, Inc.* v. *Board of Tax Review*, 182 Conn. 619, 629, 438 A.2d 782 (1981), in which we reviewed a request for an interim revaluation, we concluded that "[t]he remedy of revaluation was established by the legislature and it was the judgment of the legislature that the remedy need only be available once each decade." A request for an interim revaluation, therefore, is brought because the decennial revaluation is allegedly outdated, and is, in essence, a challenge to the legislatively chosen ten year revaluation time period.

Conversely, a challenge to the decennial revaluation in a subsequent year seeks only to correct an already

438 A.2d 782 (1981), in its summary of our case law on mandatory and permissive revaluations. None of those cases changes our view.

existing revaluation. It is a challenge to the manner of taxation; id.; and is brought to question the performance of the assessor's duties under General Statutes § 12-64. *Ralston Purina Co.* v. *Board of Tax Review*, supra, 203 Conn. 434. We find no support for denying taxpayers the right to have their decennial revaluation reflect the property's true value at the time of the decennial revaluation in our case law concerning interim valuations. While the ultimate relief of interim revaluations and challenges to decennial revaluations might be similar— a lowering of present and future assessment values— the grounds for relief are quite distinct.

### III

Last, the board claims that the tax appeals statutes themselves bar the plaintiff's action because the time during which the plaintiff could challenge the decennial revaluation of October 1, 1991, has passed. The board, however, misreads the appeals statutes in reaching this conclusion. Section 12-111 provides that "[a]ny person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to such board of tax review . . . ." See footnote 1 of this opinion. The specific "doing of the assessor" from which the plaintiff appealed was the 1992 yearly assessment and not the decennial revaluation. Any time bar to this action; see General Statutes (Rev. to 1993) §§ 12-111 and 12-117a; therefore, must use as its initial reference point the 1992 assessment and not the decennial revaluation. The fact that the decennial revaluation is the basis of the yearly assessments; see footnote 2 of this opinion; is of no consequence to the question of whether the appeal was taken timely.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.