[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a real estate tax appeal of a commercial condominium unit located at 216 Broad Street, New London. The subject site is a 1.32 acre parcel which contains a former school building constructed in the early 1900's but renovated in the mid-eighties. There are four levels to the building, a basement level and three above ground levels.
In 1986, the building was renovated and split into two commercial condominium units. The second and third floors of the building were made into a law office which owned and occupied that unit. This unit, which is not a subject of this appeal, was sold in July of 1988 for $1,150,000. The basement and first floor condominium unit was structured for use as a television broadcast studio with ancillary offices. The subject condominium unit was conveyed on September 2, 1988, from TV Center Associates Limited Partnership to TRP Associates Limited Partnerships. The purchase price for this transaction was $1,400,000. The purchase price was negotiated in 1986 as part of a lease transaction between TV Center Associates Limited Partnership and CNS Broadcasting Corporation. The lease provided for rental payments of $14.17 per square foot on a gross plus electric basis. The lease, with an option to purchase for $1,400,000 was structured based upon the cost to convert the subject condominium unit for use as a television broadcast studio with offices.
The subject condominium unit was used as a television broadcast studio until it was acquired by Fleet National Bank on August 16, 1991. On December 30, 1993, Fleet conveyed the subject premises to the present owner, Et Ux Et Al, for $120,000. From February 15, 1994 to June 29, 1994, $92,900 was expended to convert the subject property to full professional office use. The subject condominium unit is presently utilized as the law offices of the property owner.
The plaintiff's appraiser, Patrick A. Lemp, and the defendant's appraiser, Robert J. Flanagan, concluded that the highest and best use of the subject condominium unit, as of October 1, 1988, was for office use as presently improved. We disagree with the conclusions of both appraisers.[1] On October CT Page 13533 1, 1988, the subject unit was being used as a television studio. On October 1, 1988 the subject had been designed and constructed for a specialized use as a TV studio. The basement was designed to function for television use. The center of the first floor of the subject was open to the basement below to accommodate the studio.
It is significant that after the plaintiff purchased the subject unit in 1993, it expended $92,900 in 1994 to convert the property from a television studio to commercial office space. In effect, the plaintiff changed the use of the property from that of a television studio to commercial office use some six years after the revaluation date.
Both appraisers improperly considered the change in use in 1994 to determine the highest and best use as of October 1, 1988. Lemp, in his conclusion as to highest and best use in his appraisal report, stated that "giving primary consideration to the existing improvements, continuation of the office use would be the highest and best use of the property as presently improved." However, on October 1, 1988, the subject unit was being used as a television studio, not for general professional office space. Lemp disregarded the use of the property on October 1, 1988 and used instead the use of the property as office use when inspected by him in 1996. Lemp relates the conversion in 1994 back to October 1, 1988, to conclude that the highest and best use of the subject was office use, not as a television studio, even though as of 1988, there was no indication that such a conversion was to occur six years later. However, during cross examination, Lemp testified as follows regarding the highest and best use of the property: "(Londregan): Q. Would you agree with me though that as for the use of the property in October 1, 1998 (sic 1988), given the design of the interior of the building. The highest and best use as of October 1, 1988, would have been for a television studio? A. Certainly, that basement floor. Q. And the basement opening goes up into the first floor as well? A. Absolutely to create a studio." (Transcript, pp. 37-38). Flanagan also based his findings of highest and best use on office use, not a television studio use, because the use of the property at the time that the appeal was taken in 1996 was as a commercial office. (Transcript, pp. 90-91)[2]
We determine the highest and best use of the property, for tax purposes, as of the date of the town-wide revaluation which is periodically mandated by our state legislature. See General CT Page 13534 Statutes § 12-62; Jupiter Realty Co. v. Board of Tax Review,242 Conn. 363, 372, 698 A.2d 312 (1997). "Consideration of the highest and best use has been recognized by [our Supreme Court] as a valid part of any fair market value determination. . . . `Fair market value' is defined as the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal. . . . A further definition is . . . the price that a wiling buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use. . . . The `highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." Carol Management Corp. v. Board of Tax Review,228 Conn. 23, 34, 633 A.2d 1368 (1993). "The question of the highest and best use of the property as a factor in the ultimate valuation of the property is an issue of fact for the trier, based upon his evaluation of the testimony of the appraisers, the claims of the parties, his own general knowledge of the elements of value and any visual inspection of the property he may have made." Stamford Apartments Co. v. Stamford, 203 Conn. 586, 592,525 A.2d 1327 (1987). On October 1, 1988, the New London assessor could not have anticipated that six years later a new owner would convert the use of the property to office use when on October 1, 1988, the existing use of the property was as a television studio.
A determination of value on October 1, 1988 based upon a highest and best use as general office use rather than as a special use for a television studio could only properly be done if on October 1, 1988 it was reasonably probable in the near future that the conversion would occur. Carol Management Corp. vBoard of Tax Review, supra, 228 Conn. 38. No such evidence has been presented to us. On the contrary, Lemp noted in his appraisal report that the subject sold just before the revaluation date of October 1, 1988 for $1,400,000, and that this price was based upon an option to purchase provision ma lease. The lease "was structured based upon the cost to convert the subject condominium unit for use as a television broadcast studio with ancillary offices." (Plaintiff's Exhibit A, p. 4).
We basically have a property owner who purchased the subject condominium unit structured as a television studio and changed CT Page 13535 the use of the property with substantial renovations, and now, eight years after the revaluation date, claims that the assessor should have valued the property as of October 1, 1988 with a highest and best use as an office. While the plaintiff argues that it is not seeking an interim valuation, in actuality, it improperly seeks a reduction of the valuation of the subject unit based upon an interim change of use in 1994. We do not find either appraisers' determination of the highest and best use on October 1, 1988 to be credible. Further, it is not consistent with the above quoted definition of the highest and best use for Lemp to value the property at $815,000 based upon a highest and best use of office, when the property sold just prior to the revaluation date as a television studio with offices for $1,400,000. It appears, based upon the evidence of this sale, that the property produced a higher market value as a television studio, and it was indeed used as a television studio after the revaluation date.
"[A] request for an interim revaluation seeks a new valuation as of the present date because of altered conditions since the latest revaluation." Jupiter Realty Co. v. Board of Tax Review, supra, 242 Conn. 373. The legislature has not provided a taxpayer with the right to challenge the assessor's valuation except as to the valuation placed on the subject on the revaluation date. See id. Our Supreme Court recently held, in Desena v. Waterbury,249 Conn. 63, 85, ___ A.2d ___ (1999): "In light of the clarity of the statutory scheme . . . [for revaluation], and the amount of control the legislature has demonstrated over the revaluation framework, we conclude that the recognition of the nonstatutory special circumstances . . . that is, a substantial change in the use of the property or a decision by the taxpayer to go out of business — would not comport with the revaluation scheme established by the legislature."
By analogy, our Appellate Court, in a condemnation case,Gasparri v. Department of Transportation, 37 Conn. App. 126,655 A.2d 268 (1995), held that the value of property is determined not by the use which would be permitted if a change in zone was made, but rather, by "the value of the property as zoned at the time of the taking as it is affected by the probability of a change." Id., 128. Similarly, in the present action, it is the determination of the highest and best use of the property at the time of revaluation, not the highest and best use at some later date that is key to the valuation of the subject property. Simply put, the plaintiff is in essence seeking a new valuation as of CT Page 13536 the date of conversion because of altered conditions since the last revaluation on October 1, 1988. This it cannot do without a change by the legislature of the existing property tax statutes.Jupiter Realty Co. v. Board of Tax Review, supra, 242 Conn. 373.
We conclude that neither the plaintiff's appraiser nor the defendant's appraiser made a proper determination of the highest and best use of the subject property as of October 1, 1988. The most compelling evidence in this case of the value of the subject property is the sale of the subject immediately prior to the revaluation date. A sale of the subject property at or near the valuation date is an important indicator of the value of the property at that time, providing that the sale is an arm's length transaction between a willing seller and a willing buyer. The Appraisal Institute, The Appraisal of Real Estate (10th ed. 1992), p. 406. Given the sale of the subject property on September 2, 1988, just 28 days before the revaluation date, for $1,400,000, we cannot find the assessor's value of $1,024,800 on October 1, 1988, to be excessive. We find the plaintiff's method of valuation to be unpersuasive; therefore, the plaintiff has failed to sustain its burden. Ireland v. Wethersfield,242 Conn. 550, 557-58, 698 A.2d 888 (1997).
Accordingly, judgement may enter in favor of the defendant dismissing this appeal without costs to either party.
Arnold W. Aronson Judge Trial Referee