## PHILIP IRELAND v. TOWN OF WETHERSFIELD
### (SC 15482)

Borden, Berdon, Palmer, McDonald and Peters, Js.

Argued April 29—officially released August 19, 1997

*Kerry R. Callahan*, with whom, on the brief, was *Karen Keefe Clark*, for the appellant (defendant).

*Robert W. Heagney*, for the appellee (plaintiff).

*Opinion*

PETERS, J. The principal issue in this appeal is whether, in a taxpayer suit brought pursuant to General Statutes § 12-117a,[1] a respondent town has a burden

---

[1] At the time the plaintiff filed this action, the predecessor to § 12-117a was General Statutes (Rev. to 1989) § 12-118, which provided in relevant

of introducing evidence to establish that the town's assessment of the taxpayer's property did not result in an unjust tax. In order to contest the assessed valuation of property that the plaintiff, Philip Ireland,[2] owned in the defendant town of Wethersfield (town), he appealed his assessment first to the board of tax appeal of the town and thereafter to the trial court. The trial court, *Aronson, J.*, partially corrected the assessment of the plaintiff's property but denied him any further relief. Upon the plaintiff's further appeal to the Appellate Court, that court reversed the judgment of the trial court and remanded the case for a new trial. *Ireland* v. *Wethersfield*, 41 Conn. App. 421, 430, 676 A.2d 422 (1996). We granted the town's petition for certification to appeal and now reverse the judgment of the Appellate Court.

A joint stipulation of facts provides much of the largely undisputed factual basis for this appeal. As the

part: "Appeals from boards of tax review. Any person . . . claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . . The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

Although § 12-117a has undergone a number of amendments since the plaintiff originally filed his appeal, none of these amendments bears on the disposition of this appeal.

[2] During the pendency of the appeal to this court, the plaintiff died. This court granted the motion of Carol Ireland, executrix of the estate of Philip Ireland, to be substituted as party plaintiff in lieu of Philip Ireland. For the sake of convenience, we will continue to refer to Philip Ireland as the plaintiff.

result of a decennial revaluation of real estate that the town was required to undertake pursuant to General Statutes § 12-62, the town determined that, as of October 1, 1989, the plaintiff's property had a fair market value of $906,000. At that time, the plaintiff owned approximately eight acres of land on Old Reservoir Road and Whippoorwill Way, with respect to which he, in 1980, had obtained the necessary planning, zoning and inland wetlands approvals for a twelve lot subdivision. Immediately after having received these approvals, the plaintiff made substantial improvements to the property in conformity therewith, but he had discontinued such efforts in 1982. Between January, 1982, and September, 1990, the town's wetlands commission amended its regulations and maps.

In September, 1990, subsequent to the date of the tax assessment, the plaintiff sought building permits for the subdivision from the town's building inspector. These permits were denied on the ground that the plaintiff's 1980 wetlands permit had expired. The plaintiff successfully challenged the validity of this administrative ruling in a separate court action, in which the trial court, *Maloney, J.*, concluded, in 1993, that the permit issued to the plaintiff in 1980 had continued throughout in full force and effect.[3]

In arriving at a valuation of the plaintiff's property as of October 1, 1989, the town assessor (assessor) determined that the highest and best use of the property was as a residential subdivision consisting of twelve lots. In accordance with General Statutes § 12-62a (b), the assessor assessed each lot in the plaintiff's subdivision at 70 percent of its fair market value. Because improvements to the subdivision had not yet been completed as of the date of the revaluation, the assessor

---

[3] *Ireland* v. *Wethersfield*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV91-0701985 (September 24, 1993).

adjusted downward by 50 percent the fair market value of ten of the lots, to arrive at a total fair market value of $906,000. On direct examination during the presentation of the town's case before the trial court, *Aronson, J.*, the assessor conceded that he mistakenly had failed to recognize that deed restrictions required a similar downward adjustment of market value with respect to the remaining two lots. As a result, he acknowledged that the fair market value of the plaintiff's property as of October 1, 1989, should be reduced further from $906,000 to $769,000.

In his challenge to the town's assessment, the plaintiff took issue with the assessor's conclusion that, as of October 1, 1989, the plaintiff's property was to be valued as a residential subdivision. He claimed that the subdivision was not then a viable project because, on various occasions between September, 1990, and May, 1991, town officials had informed him that his wetlands permit had expired and that his subdivision approval, therefore, had lapsed. Accordingly, the plaintiff offered the testimony of an expert appraiser who stated that, in his opinion, the highest and best use of the plaintiff's property was for recreational use and that the property should, therefore, have been valued, as of October 1, 1989, at $206,000. To arrive at this figure, the appraiser selected three allegedly comparable pieces of property as evidence that the plaintiff's property had a fair market price of $25,000 per acre.

The trial court rejected the evidence of valuation offered by the plaintiff. For two independent reasons, it found the testimony of the plaintiff's expert appraiser to be unpersuasive. First, it found that, because the plaintiff neither had requested nor been refused a subdivision permit until eleven months *after* the date of the assessment, as of that date the highest and best use of the plaintiff's property was as a residential subdivision

rather than as recreational land.[4] As the court also observed, it has now been determined judicially that the plaintiff's wetlands permit was still fully in effect as of the date of the assessment. Second, even if the plaintiff's appraiser properly had determined recreational use to be the best use of the plaintiff's property, the court found that the plaintiff had not established a proper valuation because there was an insufficient relationship between the plaintiff's property and the properties selected by the appraiser as comparables.

On the basis of these findings, the trial court concluded that the "plaintiff ha[d] failed to sustain his burden of proving that the assessor's valuation of his land as of October 1, 1989 was not its true and actual value." In response to the plaintiff's motion for clarification of its decision, the court found that the "true and actual value of the property on October 1, 1989 should be $769,000," rather than the originally stated value of $906,000.

On appeal, the Appellate Court reversed the judgment of the trial court and remanded the case for a new trial. *Ireland* v. *Wethersfield*, supra, 41 Conn. App. 430. It upheld the decision of the trial court rejecting the expert opinion proffered by the plaintiff's appraiser. Id., 428–29. It expressed no reservations about the validity of

[4] The trial court impliedly rejected as incredible the testimony of the plaintiff that, some time during the summer of 1989, the town building inspector had informed the plaintiff that, although he had an approved subdivision, he could not get a building permit until he obtained a valid inland wetlands approval. In paragraph six of the joint stipulation of facts submitted as an exhibit at trial, the parties stated: "In September 1990 the Plaintiff requested that the Building Inspector of the Town of Wethersfield, Fred P. Valente, issue a building permit for the completion of [the plaintiff's subdivision]. The Building Inspector refused to issue the building permit, stating that the [wetlands] Permit had expired." Valente was not called as a witness at trial. As the Appellate Court observed in its opinion, "[o]ther than the plaintiff's testimony, which the trial court did not find credible, there was no evidence that the plaintiff's wetlands permit was not valid as of [the assessment] date." *Ireland* v. *Wethersfield*, supra, 41 Conn. App. 425.

the trial court's conclusion that the plaintiff had failed to sustain his burden of proving that the assessor's reduced valuation of the plaintiff's property was not its true and actual value. It held, nonetheless, that the plaintiff was entitled to a new trial because, in its view, the town had failed to provide sufficient evidence to permit the trial court to make a finding whether the town's reduced assessment valuation represented the true and actual value of the plaintiff's property. Id., 429.

In granting the town's petition for certification for appeal from the judgment of the Appellate Court, we framed the issue as follows: "Under the circumstances of this case, did the Appellate Court properly conclude that a new trial was required because of the absence of evidence of whether the assessment by the town would result in an unjust tax?" *Ireland* v. *Wethersfield,* 238 Conn. 903, 677 A.2d 1375 (1996). In order to address this issue, we must first clarify the nature of the burden, if any, that falls upon a town to justify a tax assessment that a taxpayer has challenged, pursuant to § 12-117a, as excessive. In light of that clarification, we then must decide whether the town is entitled to judgment in this case. We conclude that it is so entitled.

In *Xerox Corp.* v. *Board of Tax Review,* 240 Conn. 192, 690 A.2d 389 (1997), we recently restated the basic principles of the law governing a tax appeal pursuant to § 12-117a. We observed that, in such an appeal, "the trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the [taxpayer's] property. . . . At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has overassessed its property. . . . The trier of fact must arrive at his own conclusions as to the value of [the taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements

going to establish value." (Citations omitted; internal quotation marks omitted.) Id., 204. In restating these principles, we relied on cases such as *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 104, 626 A.2d 1292 (1993); *Stamford Apartments Co.* v. *Stamford*, 203 Conn. 586, 590, 525 A.2d 1327 (1987); *O'Brien* v. *Board of Tax Review*, 169 Conn. 129, 130–31, 136, 362 A.2d 914 (1975); *New Haven Water Co.* v. *Board of Tax Review*, 166 Conn. 232, 234, 348 A.2d 641 (1974); *Burritt Mutual Savings Bank* v. *New Britain*, 146 Conn. 669, 675, 154 A.2d 608 (1959).

In *Xerox Corp.*, we had no occasion to consider the extent to which our summation was a blend of two disparate lines of tax appeal cases. In all these cases, the trial court hears the tax appeal de novo on the premise that, throughout, it is the taxpayer who bears the burden of establishing an overassessment and of persuading the trial court of the true and actual value of his property for assessment purposes. *New Haven Water Co.* v. *Board of Tax Review*, supra, 166 Conn. 234.[5] The cases on establishing a true and actual value differ, however, depending on whether the taxpayer has met his initial burden of establishing that his tax assessment was excessive.

If the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds

---

[5] We recognize that there may be a tension, not explicitly resolved in our case law, between the proposition that the trial court hears a tax appeal de novo and the proposition that the trial court may defer to an assessor's valuation in deciding the true and actual value of the taxpayer's property. Contrast *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 226 Conn. 104 (no mention of deference; mere overvaluation is sufficient to justify redress) with *Stamford Apartments Co.* v. *Stamford*, supra, 203 Conn. 589 ("[t]he law contemplates that a wide discretion is to be accorded to assessors"; in order to justify redress, taxpayer must prove that assessment is "discriminatory or so unreasonable that property is substantially overvalued" [internal quotation marks omitted]). Because this issue is not encompassed within the question that we certified for appeal, as evidenced by the

unpersuasive the method of valuation espoused by the taxpayer's appraiser, the trial court may render judgment for the town on that basis alone. On appeals by the taxpayer, we have regularly affirmed such judgments without a showing that the town adduced affirmative evidence sufficient to demonstrate that the assessor's determination of market value was not unjust. See, e.g., *Gorin's, Inc.* v. *Board of Tax Review*, 178 Conn. 606, 608–10, 424 A.2d 282 (1979); *New Haven Water Co.* v. *Board of Tax Review*, supra, 166 Conn. 239–40.

If, however, the trial court finds that the taxpayer, in light of the persuasiveness, for example, of his appraiser, has demonstrated an overvaluation of his property, the trial court must then undertake a further inquiry to determine the amount of the reassessment that would be just. See *O'Brien* v. *Board of Tax Review*, supra, 169 Conn. 131. It is in the context of such cases, namely, cases in which the taxpayer *has* met his initial burden of proving overvaluation, that we have noted the trial court's discretionary authority to find value and have declined to assign presumptive validity to the town's assessment figure. *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 36–37, 633 A.2d 1368 (1993); *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 226 Conn. 103–105; *Stamford Apartments Co.* v. *Stamford*, supra, 203 Conn. 589–90.

The common sense distinction reflected by these two lines of authority is illustrated by a hypothetical case. A taxpayer claiming an overvaluation of his property might elect, at trial, to present as evidence only his personal opinion about the fair market value of his property. If the trial court were to find this evidence unpersuasive, would the town be obliged to present evidence to validate its assessment so as to enable the

fact that it has not been discussed in any of the briefs or at oral argument, we leave its resolution to full consideration on another day.

trial court to exercise its independent judgment about the amount of a just valuation of the taxpayer's property? We have never held that, in such circumstances, the trial court could not, without additional evidence from the town, adopt the town's valuation figure as a measure of the true and actual value of the taxpayer's property. We decline so to hold today. A taxpayer who carries his burden of establishing overvaluation is entitled to plenary judicial relief under § 12-117a. A taxpayer, however, who fails to carry this burden has no right to complain if the trial court accords controlling weight to the assessor's valuation of his property. See *Gorin's, Inc.* v. *Board of Tax Review*, supra, 178 Conn. 609–10.

We disagree, therefore, with the conclusion of the Appellate Court insofar as its opinion suggests that, regardless of a trial court's failure to find an initial overvaluation of a taxpayer's property, a town has an affirmative obligation to present evidence in support of its assessment so as to enable a trial court to arrive at the true and actual value of the taxpayer's property. In *Burritt Mutual Savings Bank* v. *New Britain*, supra, 146 Conn. 674, on which the Appellate Court relied, the trial court had found the experts for each of the parties to be in agreement about the best method for valuing the taxpayer's property, so that only mathematical calculations remained at issue. The need for further evidence under such circumstances does not justify imposing an evidentiary burden on the town in every disputed tax case.

The question remains, however, whether the plaintiff is entitled to a new trial for a further plenary adjudication of the true and actual value of his property because of the special circumstances arising out of the reduction of his tax assessment by the trial court. In the trial court's corrected memorandum of decision, it found that the "true and actual value of the [plaintiff's] prop-

erty on October 1, 1989 should be $769,000," rather than the originally stated value of $906,000. In light of that reduction, the plaintiff argues that, despite the contrary conclusion of the trial court, he in fact met his initial burden of proving the town's overvaluation of his property.

It is no answer to the plaintiff's argument that the trial court's reduction of the value of his property resulted from evidence presented by the town rather than from evidence that he himself presented to the court. See *Sears, Roebuck & Co.* v. *West Hartford,* 241 Conn. 749, 755, 699 A.2d 81 (1997). It is likewise no answer that this argument was not clearly raised by the plaintiff at trial, because it is encompassed within the issue that we certified for appeal to this court and was fully argued here. See *McCurdy* v. *State,* 227 Conn. 261, 265–66, 630 A.2d 64 (1993).

The closest we have come to addressing the plaintiff's argument is our decision in *Carol Management Corp.* v. *Board of Tax Review,* supra, 228 Conn. 23. In that case, the trial court accepted the opinion of the plaintiff's appraiser that the fair market value of the plaintiff's property should be derived from the sales price of three comparable pieces of property. Id., 29. On appeal, the town argued that the trial court improperly had rejected the town's fair market value figure, which was based on the cost of replacement approach to property valuation. Id., 35. We affirmed the judgment of the trial court, in part because the town had failed to introduce sufficient evidence at trial to explain why the assessor had used the cost of replacement approach to value the plaintiff's property and how the values in the assessment had been calculated. Id., 37; see also *Stamford Apartments Co.* v. *Stamford,* supra, 203 Conn. 589–90. In the absence of such evidence, we concluded that "deference to the assessor's valuation was not required." *Carol Management Corp.* v. *Board of Tax Review,* supra, 37.

Our decision in *Carol Management Corp.* is distinguishable from the present case for two reasons. First, in *Carol Management Corp.*, unlike the present case, the trial court found that the plaintiff had carried its burden of proving overvaluation. Second, in *Carol Management Corp.*, unlike the present case, neither the appraiser *nor* the assessor employed at the time of the decennial revaluation testified in support of the assessment. Id., 37.

Accordingly, we conclude that our decision in *Carol Management Corp.* did not deprive the trial court in this case of the authority to accept the assessor's corrected valuation of the plaintiff's property as probative of its true and actual value. The fact that the assessor reduced the valuation by correcting an oversight with respect to two of the twelve lots did not require the trial court, as a matter of law, to disregard the corrected assessment or to presume its invalidity.

In the same vein, the Appellate Court improperly took the view that the assessor had not provided a sufficient factual background for his valuation because he "did not . . . cite any particular comparable sale or sales to support his valuation of the plaintiff's property." *Ireland* v. *Wethersfield*, supra, 41 Conn. App. 424. The trial court reasonably could have found, however, that the assessor's failure to identify specific comparable sales, similar to his correction of his valuation oversight on the two lots, was peripheral to the central issue at trial, namely, whether the plaintiff's property was properly characterized as a residential subdivision or as recreational land. On that central issue, the trial court found that the plaintiff had failed to meet his burden of proof. Having made that finding, the trial court could properly render a judgment accepting the town's corrected valuation as representing the true and actual value of the plaintiff's property.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion BORDEN and PALMER, Js., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting. Although the majority correctly states that the principal issue in this case is the taxpayer's burden of proof, and that the decisions of this court pertaining to that burden are at best confusing, it leaves this issue for another day.[1] In my view, because the issue affects

---

[1] See footnote 5 of the majority opinion. I could not agree more with the majority that we are in a state of confusion regarding a taxpayer's burden of proof in tax appeals. We have been all over the lot with respect to the standards in General Statutes § 12-117a [formerly § 12-118] tax appeal cases. See, e.g., *Xerox Corp.* v. *Board of Tax Review*, 240 Conn. 192, 204, 690 A.2d 389 (1997) ("taxpayer bears the burden of establishing that the assessor has overassessed its property [but] . . . [t]he trier of fact must arrive at his [or her] own conclusions" [citations omitted; internal quotation marks omitted]); *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 104, 626 A.2d 1292 (1993) ("Mere overvaluation is sufficient to justify redress under General Statutes § 12-118, and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . [T]he [trial] court tries the matter de novo and the ultimate question is the ascertainment of the true . . . value," without reference to any sort of deference to the assessor's valuation. [Internal quotation marks omitted.]); *Stamford Apartments Co.* v. *Stamford*, 203 Conn. 586, 589, 525 A.2d 1327 (1987) (§ 12-118 tax appeal, but citing and quoting language from General Statutes *§ 12-119* cases, and indicating that "[the taxpayer's] burden . . . is a difficult one. . . . The law contemplates that a *wide discretion* is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their *opinion and judgment should control* in the determination of value for taxation purposes. . . . [Nevertheless, although] we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity . . . ." [Citations omitted; emphasis added; internal quotation marks omitted.]); *O'Brien* v. *Board of Tax Review*, 169 Conn. 129, 130–31, 362 A.2d 914 (1975) (stating, as in *Newbury Commons Ltd. Partnership*, that "[m]ere overvaluation is sufficient to justify redress under § 12-118, and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . [T]he court tries the matter

169 towns and other taxing districts of the state of Connecticut, and real property owners throughout the state, we have an obligation to decide this issue at this time.[2] Accordingly, I strongly urge that this issue be addressed at this time by an en banc court. I am bewildered by the majority's refusal to do so.

## I

The majority not only avoids the issue with respect to the taxpayer's burden of proof, but also causes more confusion. As best as I can determine, the majority adopts, at least for this case, the following for a tax appeal brought pursuant to General Statutes § 12-117a: The taxpayer has the burden of demonstrating "an overvaluation of his property" and "[a] taxpayer who carries his burden of establishing overvaluation is entitled to *plenary judicial relief*," (emphasis added) but a taxpayer "who fails to carry this burden has no right to complain if the trial court accords controlling weight to the assessor's valuation of his property." Even if we assume that this is the standard, whatever it means, the majority then ignores the undisputed facts of this case.

When John Dagata, the defendant's assessor, testified in the trial court, he conceded on cross-examination that the plaintiff's property was overvalued and he acknowledged that the true and actual value of the

de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." [Citations omitted.]). The confusion in these cases is due in part to the intermingling of § 12-118 and § 12-119 standards. There is a substantial difference in the standard that a trial court must apply in a § 12-118 tax appeal versus the standard that must be applied in a § 12-119 tax appeal. See *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339–40, 597 A.2d 326 (1991) (comparing and contrasting standards for tax appeals under two different statutes).

[2] Furthermore, with respect to fairness to the plaintiff, the standard should be clarified in this case. If, for example, we should adopt a "de novo" standard—that is, with no deference; see *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 226 Conn. 92; even the majority would be required to concede that this case must be remanded for a new trial.

plaintiff's property should be reduced from $906,000 to $769,000. Based upon this concession, the court reduced the assessed value from $634,000 to $538,300, which was 70 percent of the true and actual value. Notwithstanding this admission, and the standard purportedly applied in this case, the majority concludes that the plaintiff had failed to meet his initial burden of establishing an overvaluation of his property. That is simply wrong because of the concession of the defendant's assessor. In my view, the plaintiff met his burden and, therefore, he was entitled to a de novo determination of the value of the property.

There was no evidence before the trial court to support the defendant's assessment.[3] Dagata, the only wit-

[3] "Here, there were many comparable land sales cited as a group by the assessor, but no sale was cited to substantiate the valuation of the plaintiff's property by the assessor. . . . The plaintiff in the present case could not show that the factors involved in the 'broad comparable sales approach' led to an excessive tax because no factors, except a general view that land values were rising, were described or enumerated in the assessor's testimony." *Ireland* v. *Wethersfield*, 41 Conn. App. 421, 426–27, 676 A.2d 422 (1996).

" 'Excerpts from the cross-examination of the defendant's assessor follow:
" 'Q. Mr. Dagata, can you identify for this court one comparable that you relied upon in making this judgment?
" 'A. No, I can't identify one. It takes a long explanation.
" 'Q. Okay. That's fine. That's what I kind of thought the result would be. Now, you indicated there was an increase in value in properties in 1985. You also testified you heard the testimony this morning of [Eric Sjostrom, the plaintiff's appraiser] that that market peaked in 1988. Do you agree with that?
" 'A. No.
" 'Q. And when do you think the market peaked?
" 'A. I did a month-by-month study of all the sales in Wethersfield from the period of early 1988 through early 1990, and it peaked in March of 1989, to be exact.
" 'Q. So it was going down when we get to October of 1989.
" 'A. It was pretty flat that summer. It just started the downward trend in the latter part near October of 1989, that's correct.
" 'Q. And in those—in your experience, in looking at undeveloped land, when did that peak?
" 'A. I would say about the same time.

ness that testified for the defendant, was unable to substantiate the valuation of the plaintiff's prop-

---

" 'Q. Do you have any records that would inform the court of that, that you've maintained, and you personally have indicated?

\* \* \*

" 'A. . . . The valuation of the—base valuation of land in Wethersfield has remained pretty constant right through, you know, to September of 1990. And there are still residential subdivisions being built in Wethersfield.'

"The only other testimony of the [defendant's] assessor as to the value of building lots in terms of comparables was as follows: 'I've looked at each parcel as an individual parcel, whether or not [the plaintiff] owned all of them or anybody else owned all of them. They're each individual parcels. We had lot sales in Wethersfield in that time period, even in lesser neighborhoods in excess of $130,000 each, and going up to $190,000 for a one-half acre lot in Wethersfield at [that] point in time.'

"On redirect examination, the defendant's assessor testified as follows:

" 'Q. Mr. Dagata, among the three recognized methods of appraisal, what method did you employ in evaluating Ireland Estates [the plaintiff's real property] as of October, 1989?

" 'A. In a broad sense, we use the comparable sales approach.

" 'Q. All right. In what period did you look at for comparables?

" 'A. 1987, right up until mid 1989.

" 'Q. All right. And did you look at individual lot sales?

" 'A. Yes.

" 'Q. Did you do that because you were appraising individual lots?

" 'A. Yes.

" 'Q. If you can look, Mr. Dagata, at plaintiff's exhibit C, which, I believe, is in front of you, what's the range of sizes of the lots that make up Ireland Estates?

" 'A. Okay. They're not indicated on here, but to the best of my recollection, they average around one-half acre, plus or minus, most of them plus. That would be on—I can give it to you exactly, because they're on the property records.

" 'Q. Take a look at those, and I don't need the exact for each one, but if you can give us an idea as to the size of these parcels.

" 'A. Okay. It looks like a range of one-half acre to eight tenths of an acre, some of them at sixty-five hundredths and some of them at three quarters of an acre.

" 'Q. Now, Mr. Dagata, in your review of comparables and for purposes of evaluating Ireland Estates and other properties, how many land sales did you review for the period that you've described of lots in the one half an acre to eight tenths of an acre range?'

"The plaintiff objected to this question and the defendant's eliciting of any further testimony from the assessor as to specific comparables. The defendant then withdrew the question." Id., 427–28 n.5.

erty.[4] Therefore, the trial court improperly relied on the defendant's assessment and a new trial is required.

Furthermore, the defendant's actions in this case require reversal of the trial court's decision. The Appellate Court recited the relevant facts with respect to this issue. The property "was purchased in the 1960s and in 1980, the plaintiff obtained subdivision approval for

---

[4] "The court, in sustaining the plaintiff's objection to any further testimony of the defendant's assessor on redirect examination to expand on his statement on cross-examination that he could not identify one comparable in making his judgment as to value, noted as follows:

" 'The Court: The purpose of this hearing is to afford the court with enough information to make some determination on the value of the property as of October 1, 1989. And I've heard some testimony. I'm not prepared to review what I have heard until I've heard all of the evidence, and have had an opportunity to hear argument of counsel. But this case presents a substantial problem for the court. And being able to analyze and to determine what the factors are that go into making up the value of this case. You're technically correct, [Robert Heagney, the plaintiff's counsel], that, from our strict procedural rules, that we have a direct examination, and then the cross-examination, and the redirect limited to the area of the cross. And the witness did not go into the comparables on direct examination. And, I gather, [Kerry Callahan, the defendant's counsel] is now seeking to have him go into those comparables. It seems that comparables, whether they come in from the plaintiff's appraiser, or the defendant's appraiser, are certainly factors for the court to consider. But we do have certain rules and procedure[s]. So if you raise as an objection, I will sustain the objection."

" 'Mr. Callahan: Well, Your Honor, if I may be heard on the objection.

" 'The Court: Yes.

" 'Mr. Callahan: Well, I think what happened on direct is I did ask Mr. Dagata how these properties were evaluated. On cross, Mr. Heagney attacked the way in which Mr. Dagata valued the properties. What I am attempting to do now is, you know, discuss that issue. As an offer of proof, you know, Mr. Heagney attempted to cast the shadow of a doubt over Mr. Dagata's evaluation, because he couldn't name the comparables. What I'm trying to demonstrate to Your Honor, as the finder of facts, as an offer of proof, what he did.

" 'The Court: Well, but I do recall, at least on the direct examination, *the witness did not go into the comparables.* And my memory doesn't serve me that well, but it seems to me that there were—in the reevaluation, *that wasn't necessarily the assessor that did the field work, and I'm not sure that—well, he did not testify to specific comparables, and now it's coming out . . . .* ' " (Emphasis added.) *Ireland* v. *Wethersfield,* supra, 41 Conn. App. 429 n.6.

twelve building lots, with the restriction that he would not convey any lots until all public improvements were made to the satisfaction of the town. In addition to his application to the planning and zoning commission, the plaintiff applied to the inland wetlands and water-courses commission for permission to conduct work on wetlands located on the eight acres. His application for a wetlands permit was granted, and, pursuant to it, he installed storm sewers and sanitary sewer lines, filled in wetlands and conveyed title to roads and open space wetlands to the town. In September, 1990, and there-after, the building inspector refused to issue a building permit on the ground that the permit issued by the wetlands commission in 1980 had expired. The plain-tiff's second application for a wetlands permit was also denied in October, 1990. On May 4, 1991, the town informed the plaintiff by letter that the town did not recognize the 1980 wetlands permit as valid. In a sepa-rate suit, brought by the plaintiff against the town, and decided on September 24, 1993, another trial court held that the unilateral invalidation of the wetlands permit in 1990 by the town was invalid and that the permit of the wetlands commission issued in 1980 continued in full force and effect." *Ireland* v. *Wethersfield*, 41 Conn. App. 421, 423, 676 A.2d 422 (1996). The defendant's decennial revaluation as of October 1, 1989, was predi-cated upon the plaintiff being able to subdivide the property into twelve residential building lots. Although the plaintiff did not attempt to obtain his building permit until 1990, he "testified that he had been told by the town's head building inspector in the summer of 1989 that he did not have an approved wetlands permit." Id., 424.

The defendant cannot have it both ways. Between 1989 and 1993, its building inspector took the position that the plaintiff was unable to subdivide because the plaintiff's wetlands permit had expired. During that

same period of time, the defendant's assessor assessed the property on the basis that it could be subdivided for residential lots, which resulted in a higher valuation. Only after the plaintiff incurred legal expenses by bringing a separate action against the defendant was this matter resolved approximately four years later. During that period of time, the plaintiff did not have use of his property as a residential subdivision. Based upon these facts, equity requires that we affirm the judgment of the Appellate Court and order a new trial.

## II

Furthermore, the majority's decision sets our recent case of *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 633 A.2d 1368 (1993), on its head. In *Carol Management Corp.*, we unanimously agreed that "[w]hile we have recognized that proper deference should be accorded to the assessor's valuation . . . no deference to the assessor's valuation [is] warranted when neither the assessor nor the appraiser *who valued the property* during the revaluation testifies at trial." (Emphasis added; internal quotation marks omitted.) Id., 36. That makes eminent sense because the taxpayer is unable to cross-examine the person who appraised the property without his or her being present. In *Carol Management Corp.*, "neither the assessor nor the *person who appraised the plaintiff's property* . . . testified before the trial court.The only evidence pointed to by the [town] concerning the methodology employed in the assessment is the assessor's card and the previously recorded testimony of [the assessor] . . . . [That assessor] testified that it appeared from the assessor's card that a cost of replacement approach had been used to value the plaintiff's property. He stated that he had no way of knowing, however, whether other approaches had even been considered." (Emphasis added.) Id., 37. In light of that, we held that "[i]n the absence of any evidence on why the assessor used the cost of replace-

ment approach to value the plaintiff's property and how the values in the assessment were calculated, *deference* to the assessor's valuation *was not required.*" (Emphasis added.) Id.

In this case, the assessor for the defendant, Dagata, did testify, but he testified that he *did not* appraise the plaintiff's property. The appraisal of the plaintiff's property was done for the defendant by a private firm, Sabor Systems, Inc. Before the trial court, Dagata testified that a comparable sales approach was used to value the property and gave Sabor Systems, Inc.'s opinion to support the defendant's valuation. Nevertheless, Dagata was unable to identify a single comparable property sale upon which the valuation was based.[5] Also, the defendant did not introduce the appraisal report into evidence. *Ireland* v. *Wethersfield,* supra, 41 Conn. App. 427 n.4. Surely, the court should not have given deference to the assessor's valuation, under *Carol Management Corp.,* when the assessor *could not substantiate* the valuation of the taxpayer's property. Because the trial court improperly deferred to the defendant's assessment, our decision in *Carol Management Corp.* requires the reversal of the judgment in this case. See also *Stamford Apartments Co.* v. *Stamford,* 203 Conn. 586, 589, 525 A.2d 1327 (1987) ("In this case . . . no deference to the assessor's valuation was warranted. The record indicates that the appraiser employed by the [town's] assessor for purposes of the . . . valuation arrived at that valuation by a cost of replacement method. Neither the assessor, nor the appraiser who valued the property . . . on the cost of replacement method testified at the trial."). Although this is the *first* issue raised in the plaintiff's brief, for some reason the majority ignores it. I cannot condone the short shrift that the majority has given to the plaintiff's argument,

---

[5] See footnote 3 of this opinion.

an argument that undermines the foundation of the trial court's finding of valuation.

I would affirm the judgment of the Appellate Court reversing the trial court's judgment and remanding the case for a new trial for the reasons set forth herein.

Accordingly, I dissent.