[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Edward Anderson ("Anderson") acquired the subject property, 447 George Street, New Haven, ("The Property") on November 22, 1993. The property had been acquired by Dime Savings Bank of Wallingford by strict foreclosure of a mortgage held by it in the amount of $209,000.00 on September 3, 1991. At the time of the foreclosure the court considered an appraisal of the property of $210,000.00 in determining to enter a decree of strict foreclosure rather than foreclosure by sale. (See defendant' Attachment B Post Trial Memorandum of New Haven). The mortgage had been placed on the property in 1989, when it was purchased for $135,000.00 and for improvements and renovations. There is no evidence in this case as to the explanation for the amount of the mortgage that might have appeared on the original application. Further, there is no evidence as to the amounts of money spent in the improvements and renovations. Further, there was no opposition to the strict foreclosure nor was the appraisal challenged by the former owner who had defaulted on the notes CT Page 12367 secured by the mortgage. The owner filed bankruptcy proceedings. Dime Savings, now the owner, made efforts to sell the property with an asking price of $175,000.00. Dime Savings brought its asking price down to $100,000.00.
Anderson bought the property for $83,000.00 on November 23, 1993. Anderson filed this tax appeal on June 28, 1995 asserting that the assessment of the value of the property on October 1, 1991 was grossly excessive disproportionate and unlawful. Anderson seeks that the assessor reduce the actual value of the property on October 1, 1991 and accordingly the assessed value as of October 1994 pursuant to General Statutes Section 12-117a.
Notwithstanding the approved value set forth in the foreclosure action, this court gives little weight, if any, to such report because the court was using such value at the time of the foreclosure for making a determination if there was any equity for either the owner or other encumbrancers.
The court accordingly turns to the evidence presented in the instant case by the parties.
Anderson used the services of Philip W. Ball ("Ball") for his appraisal of the property at the time of trial. Ball had acted as attorney for Anderson for some time before trial and had Pre Trial Conferences in both capacities. The file indicates that Gordon A. Evans appeared as counsel on June 5, 1998 in lieu of Ball. The trial started more than one year later. At the time of trial and in the defendant's post trial brief, New Haven argues Ball's appraisal is suspect because Ball served both as advocate and objective appraiser and further violated Connecticut's rules and regulations pertaining to appraisal practice under Conn. Gen. Stat. §§ 20-500-528. This court rejected New Haven's argument to suppress the Ball appraisal. The reasons for granting such a motion in limine are without merit since the defendants have and have had an opportunity to test the weight this court should give to the appraiser. The court is not persuaded to accept the appraisal in the foreclosure suit to assist the court in making a determination in this case.
Ball's appraisal (Exhibit 4) of this Property may be summed up as follows:
The Property at the time of the re-valuation (October 1, 1991) was a 2 1/2 story building with basement consisting of 4080 CT Page 12368 square feet of finished living area at the time of the foreclosure. In September of 1991 renovations were going on to convert the first floor for office use. The property is located in the Dwight neighborhood which is zoned for Commercial/Residential use, an RH-Zone. The zone requires 5400 square feet, and exists prior to its present zoning.
Ball's report determines that the highest and best use as of October 1, 1991 is for use as a four family house. Ball makes this conclusion because the Property does not have room for parking and that there is not adequate off-street parking in this high density residential zone. Anderson testified that his lot is forty feet wide, has no driveway and his next door neighbor has a driveway and is 48 feet wide. Before evaluation in 1991, the City put evaluation of neighbor's land at 2 1/2 times more than his land but after evaluation in 1991 his land was valued higher.
Ball considered the three accepted approaches to value, the cost approach, the income approach and the comparable sales approach.
Ball relied exclusively on the market data or direct sales comparison approach (Comparable Sales) as being the most accurate value in this case because it reflects "the decision making process of the typical purchaser and actual conditions in the market place. Further, the typical purchaser of this type of property is primarily interested in what similar properties incomparable locations (emphasis added) have commanded in the market in the recent past." Ball opines that the properties are then compared and adjusted to reflect any significant variations between the sales and the subject property reflecting what the market indicates as to the value of the subject property.
Ball used three comparable sales to accumulate his data:
 Sale #1 at 590 Elm Street, New Haven Rate per square foot $37.45 Rate per room $10,000.00
 Sale #2 at 38 Wilson Street, New Haven Rate per square foot $37.89 Rate per room $9,700.00
 Sale #3 at 90 Mechanic Street, New Haven Rate per square foot $19.52 CT Page 12369 Rate per room $5,167
Ball opines based upon his comparable sales methodology, understanding the declining sales market, location, one way street traffic, lot size and building size, incomplete renovations, lack of off-street parking that the values including land of 4080 square feet at $35.00 per square foot equals $142,800; 15 rooms at $9,250 per room equals $138,750.00, that the subject property as of October 1, 1991 had a market value of $140,000.00.
The court rejects the use of the Mechanic Street Sales #3 because of its own knowledge of the area. Accordingly the value determined by the two Ball appraisals calculated on the other two comparables is $37.67 per square foot which equates to $153,957.29.
The defendant argues that the Assessor's valuation of the property is correct.
The defendant offered the testimony of the City Assessor whose Assessment Valuation Summary (Exhibit 5) set out in detail the methodology of the Revaluation Process pursuant to the mandate of Connecticut General Statutes. New Haven had done a mass appraisal through outside assistance from Sabre Systems, Inc., a Connecticut certified revaluation company. The valuation conclusions established by Sabre were approved by the City Assessor (See Exhibit 5). As a result of the revaluation required to be undertaken by the City, Anderson's property had a fair market value of $209,000.00. Larry Hughes ("Hughes") is the successor Tax Assessor for the City of new Haven.
Hughes testified and the City argues that the plaintiff has the heavy burden that the property was overvalued. Ireland v.Wethersfield, 242 Conn. 550.
Hughes testified that his chart on page 2 of Exhibit 5 supports his opinion of value. Exhibit 5 under the heading of Multi-Family Dwelling Sales used comparable sales at 511 George Street, 539 Orange Street, 301 Humphrey Street, 151-153 Willow Street and 41 Hillside Avenue. Under cross-examination Hughes concluded that the Property is in a fair neighborhood compared to the good neighborhood for the comparables he used in Exhibit 5. One of the comparables had central air conditioning and the condition of the property was average despite all the claimed CT Page 12370 renovations which Hughes never saw because he did not make an internal inspection when he prepared Exhibit 5 dated April 7, 1999. Hughes admitted that Sabre did a neighborhood profile analyzing the properties as a whole so they will have consistent values. No sales approach was done by the defendant until after the appeal.
The defendant also offered as a second expert testimony of John Leary ("Leary"). Plaintiff argues that Leary's appraisal is biased because he receives a salary of $150,000.00 per year to review the appraisals before trial to determine whether the value of the property is supported by the data he reviews. He also is called as an expert as this court has original accepted in CraigLaVin, Executor v. City of New Haven Superior Court J.D. of NewHaven No. CV 92-0338415S. Leary's appraisal is authorized under Rule of Uniform Standards of Professional Appraisal Practice (USPAP Effective March 31, 1999). See Exhibit C. The review appraisal was developed because it was an effective economic tool for banks throughout the county. This court in LaVin accepted such an appraisal to determine value because such a report in that case constituted an independent appraisal as to value.
Leary's conclusion of value coincided with Hughes analysis done under Exhibit 5 that the Fair Market Value on October 1, 1991 was $210,000.00.
Leary nor Hughes testified as to the highest and best use of the property. Neither report of Hughes or Leary discussed land values. Ball's report assessed land separately which is the correct method to determine the Fair Market Value for tax purposes. Both Hughes and Leary rely on a zone that it is a Mixed Use without rating the neighborhood. This court finds that the highest and best use for this Property because of its limitations already pointed out, is for residential purposes. The court ascribes no value to the Property for commercial use because of its limitations.
Anderson further argues that neither appraiser testified whose comparables were used by who or who originated them for Leary's review appraisal.
Anderson argues that the selection of the properties used by the City's appraisers are generally known and accepted as far superior neighborhoods. The court agrees. CT Page 12371
The plaintiff further argues that Hughes attempt to support his evaluation in this case deserves no deference. See StamfordApartment Co. v. City of Stamford, 203 Conn. 586 (1987). In this case unlike Stamford Apartment the assessor who was originally responsible for the assessment is no longer in office. In effect Hughes was trying to support an assessment for which he was never responsible. An independent appraisal a would have been more persuasive under the Rules promulgated under USPAP. Under the rules an appraiser must not accept an assignment that includes the reporting of predetermined opinions and conclusions. (Exhibit C under Conduct.)
Anderson argues persuasively "that a four unit property using the City's figures per square foot of living area in 1993 that the price of plaintiff's property would have been $89,000.00 (close to what he actually paid), and in 1991 it would have been $157,000.00. (Page 10 Post Trial Brief of Plaintiff).
For the reasons above discussed and outlined this court finds that the Fair Market Value of the Property on October 1, 1991 is $157,000.00.
Judgment may enter to correct the assessments on the list for October 1, 1994 in accordance with this decision plus costs.
Frank S. Meadow Judge Trial Referee