ZML 301 TRESSER LIMITED PARTNERSHIP *v.* CITY OF STAMFORD
(AC 21235)

PRUDENTIAL REALTY SECURITY II, INC. *v.* CITY OF STAMFORD
(AC 21236)

Lavery, C. J., and Flynn and Peters, Js.

Argued September 25, 2001—officially released January 29, 2002

*Jonathan S. Bowman,* with whom were *Barbara M. Schellenberg* and, on the brief, *Monte E. Frank* and *Kenneth B. Pavadator,* for the appellant (defendant in both cases).

*Elliott B. Pollack,* with whom were *Gregory F. Servodidio* and, on the brief, *Gwen P. Weisberg,* for the appellees (plaintiff in each case).

*Opinion*

PETERS, J. Municipal taxation of real property is governed by state statutes. These statutes reflect the

intent of the legislature that, with few exceptions, real property will be revalued only at the time of a periodic citywide revaluation. Without an annual showing of aggrievement, the market value of real property as established in the base year of revaluation carries over and so governs tax assessments for the interim years until the next citywide revaluation. General Statutes § 12-62 (a) (1).[1] Interim changes in the *market value* of real property are not grounds for reassessment. See id.

One of the statutory exceptions to § 12-62 (a) (1) is found in General Statutes § 12-53a,[2] which authorizes an interim reassessment if a taxpayer has made physical

[1] General Statutes § 12-62 (a) (1) provides in relevant part: "Commencing October 1, 1997, the assessor or board of assessors of each town shall revalue all of the real estate in their respective municipalities for assessment purposes in accordance with the provisions of subsection (b) of this section. The assessments derived from each such revaluation shall be used for the purpose of levying property taxes in such municipality in the assessment year in which such revaluation becomes effective and in each assessment year thereafter until the next succeeding revaluation in accordance with the provisions of subsection (b) of this section. . . ."

The applicable statutes have been amended since 1993. The city has not taken issue with the taxpayers' reliance on the present § 12-62 (a). We assume, therefore, that the statutory revisions were intended to be a clarification, rather than a substantive change from prior statutes.

[2] General Statutes § 12-53a provides in relevant part: "(a) Completed new construction of real estate completed after any assessment date shall be liable for the payment of municipal taxes from the date the certificate of occupancy is issued or the date on which such new construction is first used for the purpose for which same was constructed, whichever is the earlier, prorated for the assessment year in which the new construction is completed. . . .

"(b) The building inspector issuing the certificate shall, within ten days after issuing the same, notify, in writing, the assessor of the town in which the property is situated.

"(c) Not later than ninety days after receipt by the assessor of such notice from the building inspector or from a determination by the assessor that such new construction is being used for the purpose for which same was constructed, the assessor shall determine the increment by which assessment for the completed construction exceeds the assessment on the taxable grand list for the immediately preceding assessment date . . . and shall within five days notify the record owner . . . and the tax collector of the municipality of such additional assessment. . . ."

improvements to the property. The question at issue in this appeal is whether a taxpayer loses the carryover right established by § 12-62 (a) (1) once § 12-53a authorizes a reassessment. Under the circumstances of this case,[3] the answer to that question turns upon the significance of the city's failure to make a reassessment according to the market value standard that the city now claims to be appropriate. We conclude, as did the trial court, that the taxpayers herein did not lose their carryover rights under § 12-62 (a) (1) and therefore did not have to prove their aggrievement for subsequent tax years.

The plaintiffs, ZML 301 Tresser Limited Partnership, now EOP-Three Stamford Plaza, L.L.C., and Prudential Realty Security II, Inc., now EOP-Four Stamford Plaza, L.L.C., (taxpayers) brought separate actions in the Superior Court against the defendant city of Stamford (city) to obtain refunds for property taxes they allegedly had overpaid.[4] See General Statutes § 12-117a.[5] As originally filed, their complaints concerned the tax year 1993, the year of revaluation. While these complaints were pending, the taxpayers amended their complaints to include the tax years 1994 through 1998. For trial, the cases were consolidated and referred to an attorney

[3] Although these appeals involve two different taxpayers, their cases were consolidated both for trial and for appeal because, for present purposes, they are indistinguishable. For the sake of convenience, we refer to the taxpayers as having jointly brought one case.

[4] Before seeking relief in the Superior Court, the taxpayers properly had raised their claims before the city's board of tax appeal.

[5] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994 . . . to the superior court for the judicial district in which such town or city is situated . . . ."

trial referee; General Statutes § 52-434 (a) (4) and Practice Book (1999) § 19-2, now § 19-2A; for an evidentiary hearing.

In his report to the trial court, the attorney trial referee found that the taxpayers had established their aggrievement and their overtaxation both for the base tax year 1993, the year of revaluation, and for subsequent tax years 1994 through 1998. Over the objection of the city, the trial court accepted the report of the attorney trial referee and rendered judgments in favor of the taxpayers' right to recover excess tax payments. We affirm these judgments.

In its appeal to this court, the city no longer contests the taxpayers' aggrievement and their entitlement to tax refunds for 1993, the base year. With respect to the subsequent tax years, however, the city argues that, as a matter of law, the taxpayers were not entitled to tax refunds without a further annual showing, through expert testimony, of valuations of their properties that reflected the enhanced market value of their properties as improved. We are unpersuaded.

The report of the attorney trial referee sets out the relevant facts, which now are undisputed. As authorized by § 12-117a,[6] the taxpayers filed tax appeals in the years 1993 through 1998. With respect to the base year, 1993, the taxpayers proved, through expert testimony, that they were aggrieved and had been overtaxed. For the subsequent tax years, the taxpayers introduced no further evidence of aggrievement and overassessment.

During these subsequent years, the taxpayers made substantial improvements[7] to their properties. As a result of those improvements, the city assessor increased the taxpayers' assessments to reflect the

---

[6] See footnote 5.

[7] One taxpayer spent approximately $10 million and the other spent approximately $15 million on improvements.

changes in the values of their properties as improved.[8] The reassessments were based on the enhanced physical values of the properties. Inferentially, these reassessments did not purport to recalculate the value of the plaintiffs' properties in light of citywide changes in market conditions that had occurred after 1993. The taxpayers paid the additional taxes resulting from the reassessments of the improvements, which they did not then or now contest.

On the basis of these factual findings, which are undisputed, the attorney trial referee concluded that the taxpayers had established their aggrievement and their over-assessments both for the base year and for the tax years 1994 through 1998. That conclusion was premised on the determination that the carryover provision in § 12-62 (a) (1) applied despite the taxpayers' property improvements. The city's disagreement with this conclusion is the focal point of its appeal to this court.

The city argues that, for three reasons, the taxpayers were not entitled to tax refunds for any year subsequent to 1993. It maintains that, with respect to succeeding tax years, the taxpayers have (1) relied on improper pleadings, (2) failed to prove their aggrievement and (3) failed to establish the market value of their properties.

Each of the city's arguments presents an issue of law. In a tax appeal, "[w]hen . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Union Carbide Corp.* v. *Danbury*, 257 Conn. 865, 871, 778 A.2d 204 (2001); see also *DeSena* v. *Waterbury*, 249 Conn. 63, 73, 731 A.2d 733 (1999); *Davis* v. *Westport*, 61 Conn. App. 834, 840, 767 A.2d 1237 (2001).

---

[8] See footnote 2.

The second and third of these issues present questions of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

## I

## PLEADINGS

The city's first claim is that the taxpayers are not entitled to relief because of significant defects in their amended pleadings. This claim need not long detain us because it is not sustained by the record. The city argues that the plaintiffs' amended pleadings were improper because they contained no factual allegations to support their right to refunds for the years following 1993.

According to Practice Book § 60-5, this court is bound to review a claim on appeal only if "it was distinctly raised at the trial or arose subsequent to the trial. . . ." At trial, although the city initially had objected to the taxpayers' amended pleadings, it thereafter formally withdrew its objection. The city has not directed our attention to anything in the record that would demonstrate that, despite the withdrawal, the issue was somehow revived during the hearing held by the attorney trial referee. The city does not argue that this claim is of such significance that it warrants plain error review.

See Practice Book § 60-5. We decline to undertake any further review of the merits of this claim.

## II

## AGGRIEVEMENT

The city's second and principal claim is that the judgments at trial improperly relieved the taxpayers of their burden to show their aggrievement for each of the tax years *subsequent* to 1993. Concededly, the taxpayers would have had no such burden if they had not improved their properties.[9] According to the city, § 12-53a shifted that burden back to the taxpayers once they improved their properties. We disagree.

Before we address the merits of the city's argument, we need to place it in context. For the ordinary tax appeal, § 12-117a "provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . ." (Internal quotation marks omitted.) *Konover* v. *West Hartford*, 242 Conn. 727, 734, 699 A.2d 158 (1997), and cases therein cited. In this case, by contrast, the taxpayers have *not* questioned the revaluation of their improved properties by the city's tax assessor. Furthermore, there is nothing in the record to show that the city ever has reassessed their properties according to the market value standard that the city now claims to be applicable. Notably, under § 12-53a (c), reassessments are not effective until a taxpayer is given notice thereof.[10] The taxpayers received no notice of any kind. Cf. *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 467. It is ironic, to say the least, that the taxpayers' *successful* actions to correct 1993 overassessments based on market value should now serve as a platform for *reducing* their rights to refunds in subsequent years.

---

[9] See footnote 1.
[10] See footnote 2.

Despite the lack of a reassessment based on changed market values, the city contends that the taxpayers must show their aggrievement for every tax year after 1993. According to the city, they must prove that their improved properties were overvalued, not by 1993 market values, but by the annual market values of their improved properties in each succeeding tax year.

As a matter of statutory construction, the city argues for a market value standard that is nowhere to be found in the text of § 12-53a. Although the statute authorizes the reassessment of improved property, it fails to specify the standard that should govern such reassessments. To the best of our knowledge, there is no legislative history that might assist us in filling the statutory gap.

As a matter of case law, the city's position is no stronger. The city relies on this court's decision in *Midway Green Corp.* v. *Board of Tax Review*, 8 Conn. App. 440, 443, 512 A.2d 984 (1986), but that case is distinguishable for a number of reasons.

In *Midway Green Corp.*, we *affirmed* the trial court's factual finding that the taxpayer had failed, as a matter of fact, to overcome, for any tax year, the presumption of validity that attaches to a municipal assessment. Id. In this case, the taxpayers have succeeded in establishing their overtaxation for 1993.

Further, in this case, the city has not *made* any market oriented reassessments to which a presumption of validity might attach. See *Ireland* v. *Wethersfield*, 242 Conn. 550, 558, 698 A.2d 888 (1997). In the absence of such reassessments, we are not persuaded by the city's argument that "[its] subsequent valuations should remain valid until proof of overvaluation for each of those years" is offered.

Finally, in *Midway Green Corp.*, this court did not have the opportunity to consider subsequent interpreta-

tions of the applicable principles by our Supreme Court. In *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 102–103, 626 A.2d 1292 (1993), and subsequently in *DeSena* v. *Waterbury*, supra, 249 Conn. 75–77 n.15, that court stated that, if interim revaluations were appropriate, the base year of revaluation would be the appropriate measure of the market value of taxable property.

The city's final argument addresses the policy behind municipal taxation of property generally and § 12-53a specifically. It maintains that an affirmance of the judgments in favor of the taxpayers would cause injustice and would "constitute a de facto repeal" of § 12-53a. In its view, this statute was intended to permit a municipality to reassess the market value of property that has undergone significant physical change. Without such a reassessment, a taxpayer would unjustly reap the benefits of an improved piece of property without a correlative duty to pay its fair share of taxes on that property. The city claims that this case illustrates the persuasiveness of its position because the taxpayers' construction of the statute is tantamount to establishing the principle that improvements in real property have no tax consequences. This argument does not apply in this case because, as earlier noted, the taxpayers have paid higher tax bills as a result of the reassessments to which they have agreed.

Under the circumstances of this case, we conclude that the taxpayers are entitled to recover tax overpayments stemming from 1993 over-assessments. Perhaps the outcome would be different if the taxpayers were challenging actual reassessments pursuant to § 12-53a that incorporated considerations of current market values. That question is not before us. In light of the taxpayers' acquiescence in the only reassessments that the city ever made, and the absence of further city reassessments based on changed market conditions, we are

persuaded that the city cannot prevail on its claim that the taxpayers were required to prove their aggrievement in each tax year after 1993.

## III

## PROOF OF MARKET VALUES

The city's final claim is that the taxpayers cannot prevail because they have failed to establish the market value of their properties. As the city acknowledges, this argument is closely tied to its argument about aggrievement. If, as we have concluded, the taxpayers are entitled, for the purpose of aggrievement, to avail themselves of the carryover provision contained in § 12-62 (a) (1), we can find no basis for any duty on their part independently to establish the market values of their properties. The statute permits the taxpayers to challenge overassessments relating to the market value of their property at the time of a periodic reassessment. The city has accepted that interpretation of the statute with respect to the base tax year 1993. It has not explained why taxpayers who have established that they have no duty to prove aggrievement for subsequent tax years nonetheless must prove the market value of their improved properties. The city has cited no statutory or case law support for its position. The cases that it does cite fail to make a distinction between proof of aggrievement and proof of market values. Further, all of those cases arose in the context of taxpayer challenges to actual assessments.

The city cannot prevail on this claim.

The judgments are affirmed.

In this opinion the other judges concurred.