BAY HILL CONSTRUCTION, INC. *v.* CITY OF
WATERBURY ET AL.
(AC 22651)
(AC 22652)

Flynn, Bishop and Hennessy, Js.

Argued January 14—officially released April 1, 2003

*Robert P. Hanahan,* with whom, on the brief, was *Patrick E. Maloney,* for the appellant (plaintiff).

*Charles E. Oman III,* for the appellee (defendants).

*Opinion*

FLYNN, J. The plaintiff, Bay Hill Construction, Inc., appeals from the judgments of the trial court rendered in favor of the defendants, the city of Waterbury (city) and its board of tax review (board). The trial court refused to reduce the valuation of the plaintiff's property located at 42 Gayridge Road in Waterbury. The sole issue on appeal is whether the court improperly determined that the highest and best use of the plaintiff's condominium units for tax assessment purposes was as condominiums instead of as rental apartments. We affirm the judgments of the trial court.

The court found the following facts, which are undisputed. "In 1987, the plaintiff commenced construction of a sixty-four unit condominium development on Gayri-

dge Road. The plans called for two buildings each with seven units and five buildings with ten units each. All approvals for the condominium development had been given by the city. During 1988, the plaintiff completed construction of two buildings and made one sale late that year. In 1989, the plaintiff completed another building and continued selling units in the two buildings that had been completed. In 1990, the plaintiff began erecting the fourth building when the condominium market became severely depressed. At that time, all roads, asphalt paving, water, sewers and foundations for all planned buildings were installed.

"The plaintiff financed the construction by virtue of first and second mortgages. By 1990, the plaintiff had sold a total of twenty-seven units. When, in 1990, the plaintiff was unable to sell additional units, [American Bank of Connecticut] agreed to extend the loan on condition that no additional advances for construction would be made.

"In 1994, the plaintiff sought additional bank financing to complete construction of the project. The bank advanced the sums on condition that the plaintiff offer the units only as apartments for rent. However, the buildings and/or project were never undeclared as condominiums, and according to the plaintiff, the bank requested that the units remain declared to protect the bank's interests. The subject property's assessment is based on the 1980 valuation as condominiums."

The plaintiff's property was declared as condominiums in 1989 pursuant to the Common Interest Ownership Act codified in General Statutes § 47-200 et seq. The last revaluation in Waterbury at the time of the trial was conducted in 1980. This fact is important because the city assessor was required to value newly constructed property as of the 1980 date of the last revaluation. See *Torres* v. *Waterbury*, 249 Conn. 110,

120–21, 733 A.2d 817 (1999); *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 95, 626 A.2d 1292 (1993). The valuation of the plaintiff's property as of the 1980 revaluation was done to prevent grossly disproportionate or excessive assessments of newly constructed property built after the last general revaluation.

The issue before the court was to determine whether the assessment of the property as condominiums was improper. The plaintiff presented the testimony of Robert J. Nocera, a real estate appraiser and consultant. Nocera testified that the highest and best use of the plaintiff's property in 1980 was as rental apartments. His opinion was based on the market conditions for condominiums in 1980 including the presence of high interest rates, the availability of financing for condominiums, a limited amount of existing condominium units, and the novelty of condominium ownership. These factors, he concluded, resulted in the lack of a market for condominiums in 1980, and, therefore, the property's highest and best use was as rental apartments.

The defendants presented the testimony of Armand Carbone, a real estate appraiser for the city. Carbone stated that utilizing a comparable sales approach, the highest and best use of the property in 1980 was as condominiums. In reaching his conclusion, Carbone researched condominium sales in Waterbury for the years 1979 and 1980. Waterbury had three condominium complexes in 1980. He found that there were thirty-one sales of condominiums during these years with an average price of $38,000. Carbone also researched the sale of apartments in Waterbury during 1980. He discovered four sales of apartments ranging from $15,476 to $19,439. On the basis of these values, Carbone concluded that the highest and best use of the property in 1980 was as condominiums and the court so found.

Our law governing tax appeals pursuant to General Statutes § 12-117a is well settled. "[T]he trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the [taxpayer's] property. . . . At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has overassessed its property. . . . The trier of fact must arrive at his own conclusions as to the value of [the taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value." (Internal quotation marks omitted.) *Ireland* v. *Wethersfield*, 242 Conn. 550, 556–57, 698 A.2d 888 (1997).

"We review the trial court's conclusion in a tax appeal pursuant to the well established clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

The parties agree that the value of the plaintiff's property, which was constructed subsequent to the last general revaluation in Waterbury in 1980, should be assessed as if the property had been in existence at that time. See *Torres* v. *Waterbury*, supra, 249 Conn.

120–21; *Newbury Commons Ltd. Partnership* v. *Stamford,* supra, 226 Conn. 95. General Statutes § 12-63 (a) provides in relevant part that "[t]he present true and actual value of . . . property shall be deemed by all assessors and boards of assessment appeals to be the fair market value thereof and not its value at a forced or auction sale."

"A property's highest and best use is commonly accepted by real estate appraisers as the starting point for the analysis of its true and actual value. . . . [U]nder the general rule of property valuation, fair [market] value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land. . . . A property's highest and best use is commonly defined as the use that will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate. . . . The highest and best use determination is inextricably intertwined with the marketplace because fair market value is defined as the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use. . . . The highest and best use conclusion necessarily affects the rest of the valuation process because, as the major factor in determining the scope of the market for the property, it dictates which methods of valuation are applicable. Finally, a trier's determination of a property's highest and best use is a question of fact that we will not disturb unless it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor,* supra, 262 Conn. 25–26.

The sole issue is whether the court, in its de novo review, improperly concluded that the highest and best use of the plaintiff's property was as condominiums in arriving at the fair market value of the property. "It is

well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) Id., 26.

We conclude that the court's determination that the highest and best use of the property was as condominiums in 1980 is not clearly erroneous. The court stated in its memorandum of decision: "The appraiser used the market sales approach to reach his conclusion and the court is persuaded by his testimony. In weighing the opinions of highest and best use proffered by both the plaintiff and the defendants, the claims of the parties in light of all the circumstances in evidence bearing on value, it is the court's conclusion that the highest and best use of and value of the property is for condominiums." The court's factual finding is supported by Carbone's testimony detailing the sales of apartments and condominiums in 1980 in Waterbury, the property assessment cards of the plaintiff's property and the valid declaration of the plaintiff's property as a condominium complex.

In its memorandum of decision, the court quoted the language in *Saybrook Point Marina Partnership* v. *Old Saybrook*, 49 Conn. App. 106, 111, 712 A.2d 980, cert. denied, 247 Conn. 904, 720 A.2d 515 (1998), that "the sole factor in determining whether property should be assessed as a condominium is the existence of a valid declaration of condominium." The plaintiff attempts to distinguish *Saybrook Point Marina Partnership* from the present case. The plaintiff argues that in *Saybrook Point Marina Partnership*, we held only that property could not be taxed as a condominium unless there was

a valid declaration although a planned conversion from apartments to condominiums might enhance the property's value. Furthermore, the plaintiff contends that we did not hold that the existence of a valid declaration dictates that property must be assessed as condominiums. We decline to address this issue because it is not necessary to the disposition of this appeal. The plaintiff did not meet its burden of proof that its property was overassessed, and the court's determination that the highest and best use of the plaintiff's property was as condominiums was not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.