[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the owners of residential real estate including the buildings and improvements therein, located in the Town of Middlebury. The plaintiffs appeal the valuation of their property as set forth on the grand list of October 1, 1992, and for the years subsequent thereto.
The assessor valued the property as having a value of $521,100. Upon appeal by the plaintiffs to the Board of Tax Review of the Town of Middlebury, the Board reduced the valuation to $468,900. The plaintiffs thereupon appealed to this court. The valuation of the property set for the grand list of October 1, 1992 was in conjunction with the mandatory decennial evaluation, as required by General Statutes § 12-62.
The previous valuation of the property for the last decennial valuation, based on 1982 values, was an assessed value of $133,960. The change in valuation by the assessor increased the assessed value to $525,760, based on 1992 values. The assessed values are at seventy percent of valuation of the property. Hence the fair value of the property at full value would be $191,371 at CT Page 11618 1982 values, and, was initially changed by the assessor to $751,055 based upon 1992 values. The revision thereafter accomplished by the assessor reduced his original assessment to $368,660, reflecting a valuation of $526,657, as set forth in the notice from the assessor to the plaintiff dated December 30, 1992. The Board of Tax Review reduced the assessed value to $332,110 reflecting a value of $468,900.
 I
The first issue which the court addresses is the claim of the plaintiff that the defendant's non-compliance with the notice provisions of General Statutes § 12-55, in 1993, as related to the Grand List reassessment of October 1, 1992, precludes the defendant from increasing the valuation above the 1982 decennial valuation.
General Statutes § 12-55 provide that the assessor "shall send written notice by mail of such increase in accordance with subsection (b) of this section. . . ."
Subsection (b) provides as follows:
 "(b) The written notice of assessment increase as required by in subsection (a) of this section shall
be mailed on or before the tenth day immediately following the date on which the grand list abstract is signed and attested to by the assessor or board of assessor. If such assessment increase notice is sent later than he time period herein prescribed, such increase shall become effective on the next succeeding grand list." (Emphasis added).
It is undisputed that the assessor did not send the requisite notice "on or before the tenth day immediately following the date on which the grand list abstract was signed and attested by the assessor or board of assessors." The grand list was signed on January 29, 1993. The assessor did not thereafter send the notice of increase of assessment. The sending of the notice by the assessor on December 30, 1992 does not comply with the statutory mandate.
This court determines that the provisions of General Statutes § 12-55 are mandatory. The failure of the defendant to send the mandatory notice during the mandatory ten day period provided CT Page 11619 by General Statutes § 12-55 are in fact mandated by statute. The sending of notice prior to the signing of the grand list is not in compliance with the statute.
The failure of the defendant to send the mandatory notice as required by General Statutes § 12-55 causes the prior thereto notice to be ineffectual. See Alan Schafer v. City of Hartford,
Superior Court at Hartford, Case # CV 90-0381620 S and CV 90-0381621 S, 5/31/94; 11 CONN. F. RPTR. No. 17, 534, (July 4, 1994). If there be any ambiguity it must be resolved in favor of the taxpayer. Security Mills, Inc. v. Norwich, 145 Conn. 375,377 (1958).
The General Assembly, by Public Act 95-283, changed the notice requirement to read ". . . no earlier than the assessment date and no later than the tenth calendar day immediately following the date on which the grand list abstract is signed and attested by the assessor or board of assessors." This amendment does not affect, nor does it purport to affect the notice requirements for years prior to the date of the change in the legislation, in 1995.
Consequently the court determines that the increase attempted to be effectuated by the assessor for the list of October, 1992 is ineffective, and hence unenforceable for that tax year. Consequently the appeals is sustained as concerns that tax year. The increase for that tax year, increasing the valuation to an amount in excess of the valuation of the last list, and basing that year's valuation upon the list of 1992, is null and void. Taxes for that year shall be based upon the valuation and list for the prior year.
 II
The defendant further asserts that because the assessor has not sent an additional notice for years subsequent to the tax year applicable to the year October 1, 1992 any increase in tax for years subsequent thereto are invalid. The court views this argument as an ingenious argument, without merit. The Board of Tax Review sent the notice of its decision to the plaintiff dated February 27, 1993. There is no provision of statute which requires the assessor to reiterate the decision of the Board of Tax Review by sending to the taxpayer an additional notice duplicating the decision of the Board of Tax Review. The court determines that the absence of a further and superfluous notice CT Page 11620 by the assessor informing the taxpayer of the decision of the Board of Tax Review is neither substantively necessary, nor mandated by law. Hence the court rejects the plaintiff's contention that the failure of the assessor to send a supplementary notice of the decision of the Board of Tax Review precludes the assessor from adjusting and increasing the assessment for those subsequent years to reflect the decision of the Board of Tax Review.
 III
As to the merits of the appeal. The trial court "hears the case de novo . . . . and has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as it finds applicable. . . ." CarolManagement Corp. v. Board of Education, 228 Conn. 23, 36 (1993).
The property consists of a large brick home, constructed approximately fifty five years ago, located on Burr Hall Road, in the town of Middlebury. The property is of distinctive style, of brick construction which brick is over painted with white, giving a somewhat mottled and rather charming appearance. It contains eight rooms, with five bedrooms and four baths. It is located on a two acre site, accessed by a gravel driveway approximately one half mile from the end of the roadway.
The property has good views of the surrounding countryside. Although the property was purchased in 1992 for the price of $780,000 that price included as additional acreage eighteen acres which has since been dedicated to farm use, and hence is not the subject of this appeal. Hence this assessment and the appeal deals only with the dwelling house and improvements on two acres of land.
The defendant paid $780,000 for this property inclusive of the additional eighteen acres, which itself composed part of a larger total purchase, with the additional approximately sixty nine acres in an adjacent contiguous town, Watertown.
This assessment and appeal deals exclusively with the house and improvements and the two acres on which it is situated, located in the town of Middlebury. The plaintiff Frank Sherer testified that he believes that he overpaid for the twenty acres and the house as he and his wife were enamored with the house and setting, and felt the pressure of another similar bid for the CT Page 11621 property. This may be the case. This court deals with, and must deal exclusively with, the fair market value of the house and improvements situated on the two acres of land.
The trial court, in appeals of this nature, hears the case de novo and has the right to accept so much of the testimony of the experts and the recognized methods which they employed. CarolManagement Corp. v. Board of Tax Review, 228 Conn. 23, 36
(1993).
The plaintiff, in this tax appeal, presented the testimony of Robert Nocera. He testified that the fair market value of this property was $375,000. The court has carefully reviewed the testimony of Mr. Nocera and the written appraisal submitted therewith, Plaintiff's exhibit #9.
The defendant presented the testimony of Mary M. Rosengrant, and the appraisal submitted therewith, defendant's exhibit T. Ms. Rosengrant testified that the fair market value of the property was $425,000.
Admittedly, as is reflected in the reports of both appraisers, the valuation of this property presented some difficult challenges. The subject house was constructed in 1937, and incorporates what is considered to be solid construction, with good quality materials, and solid brick exterior with a slate roof. The dwelling is of French Colonial Style which presents a pleasing visual and aesthetic appearance. It is a large house, of 3,743 sq. ft., consisting of eight rooms, with five bedrooms and four, or three and one half bathrooms.
The property has an in-ground swimming pool and possesses good views of adjacent rolling and wooded terrain. The neighborhood is described as rural residential, in a desirable area of town. The Burr Hall Road terminates approximately one half mile from the subject property, with further access being over a gravel roadway. The property possesses a degree of privacy commensurate with the distinguished character of this type of home.
The building demonstrates a considerable degree of deferred maintenance. The halls and the kitchen do require updating, and other rooms require non-structural renovations, such as patching and painting of plaster walls, and floor sanding and refinishing, are called for. These latter steps should not be cost CT Page 11622 prohibitive, bearing in mind the good quality of construction of the dwelling.
The defendant's appraiser, Ms. Rosengrant utilized as part of her comparable sales analysis four comparable properties, three of which were of good construction, all four of which were constructed between 1937 and 1941, and she made appropriate adjustments between the subject and the comparables. The defendant's appraiser Mr. Nocera utilized properties of a different era, ranging in age from five to eight years old.
The court determines that the choice of comparables of Ms. Rosengrant, and the adjustments made thereafter are clearly reflective of the fair market value of the subject property. The court determines that the fair market value of this property as of the assessment date was four hundred and twenty five thousand dollars, as testified to and as reflected in the appraisal of Ms. Rosengrant.
 III
The plaintiff asserts that their property should be assessed at 55.47% of fair market value.
General Statutes § 12-62a (b) provides that the municipalities shall assess all property at a uniform rate of seventy percent of present true and actual value, as determined under the provisions of § 12-63.
Section 12-63 provides that the present true and actual value of all . . . property shall be deemed to be the fair market value thereof and not its value at a forced auction sale.
The plaintiff's appraiser Mr. Nocera prepared a report, and so testified, that similar properties in Middlebury sold for prices ranging from a low of $323,000 to a high of $1,064,695, thereby concluding that the average ratio, assessment to sales prices, indicated an average of 55.47% of assessment to sales price. Of the fifteen properties ten of them had a ratio of over sixty one percent, the highest of which being 70.96 percent. The average is of course skewered downward by two properties which sold in the forty percent range.
The defendant produced the testimony of Mr. Frank Ryan of Newburyport, Mass. Mr. Ryan is well qualified to testify CT Page 11623 concerning assessment ratio studies, having worked with such statistical methods both in the state of Massachusetts and New York. He properly points out that this method is not generally considered to a valid method of property appraisal. The court determines that the sampling of the properties chosen by Mr. Nocera is simply inadequate to draw the conclusions sought to be drawn. Fifteen properties, selectively chosen is simply inadequate. The statistical basis is insufficient. Further, the use of average, rather than median, does not properly eliminate properties in the extremes of the spectrum. The court notes that even using Mr. Nocera's fifteen samples the median is in the sixties percent group rather than the 55.47 percent testified by Mr. Nocera. Median, rather than average would be the appropriate statistical goal of a proper analysis, even if this approach, contrary to statute, would be the proper approach to valuation.
As the plaintiff herself points out in the brief, the use of actual sales to form a basis for the valuation of a property is always somewhat suspect. General Statutes § 12-63d precludes the assessor from changing the assessment "solely on the basis of sales price of such parcels in any sale or transfer of such parcel." The reason for this statute is obvious, in that it precludes the assessor from changing the assessment of a property solely on the basis of the vagarities of the market place as of a given sales date this further precludes the placing upon a recent buyer a disproportionate burden by virtue of the price paid by a particularly motivated purchaser, without regard to the actual fair market value of the property based upon comparable sales.
The citation by the plaintiff of the case of Lerner Shops ofConnecticut, Inc. v. Waterbury, 159 Conn. 79 (1963), is clearly distinguishable, and is distinguished from the herein circumstances. The Waterbury assessor was using fifteen year old valuations to set the value of property, by using 1945 prices to set 1960 values. This resulted in a clearly demonstrated fifty one percent town wide assessment because of increasing market conditions. The circumstances of that case are clearly not the circumstances presented by the instant case.
The fact that this court concludes, upon careful scrutiny and many days of trial, that the assessor's value for this property was higher than fair market value does not lead to the conclusion that the assessment must be placed at either the highest or the lowest sales price of any other property based upon the proposition that another property may have sold at a price CT Page 11624 greater than its assessment valuation.
To ascribe to an assessor, any person, such mystic powers to specifically predict the actual future sales price of any property is plainly unrealistic.
The court rejects the contention of the plaintiff that the plaintiff's property should be assessed at 55.47% of fair market value, in contradiction to the statutory mandate of 70%. The court credits neither the basis for the statistical conclusion of the plaintiff, not the plaintiff's argument that such further deduction from the mandatory percentage of valuation is appropriate.
 IV
The court grants the plaintiff's motion to include in this appeal each assessed year subsequent to the year for the list of October 1, 1992. The court determines that the valuation of the property is four hundred and twenty five thousand dollars and that the assessed value, at seventy percent, is three hundred and eighteen thousand seven hundred and fifty dollars. As aforementioned, said valuation shall apply to all years subsequent to the assessment year October 1, 1992. The valuation for the year October 1, 1992 shall be that of the previous year.
The court orders that any overpayment of taxes shall be refunded together with interest, or at the taxpayer's option, may be applied as a tax credit for such overpayment together with interest. (General Statutes § 12-117a). Costs shall be taxed by the clerk of the court and shall be included in said refund or such optional credit. Said assessed value, $318,750 shall remain on the grand list as provided, by law (C.G.S. § 12-117a).
L. Paul Sullivan, J.